THE STATE EX REL GRANT COUNTY, Appellant, vs. THE STATE BOARD OF SUPERVISION OF WISCONSIN CHARITABLE, REFORMATORY, AND PENAL INSTITUTIONS, Respondent.

*August 28 — September 18, 1888.*

*Hospitals for insane: Support of inmates: Correction of erroneous charge against county: State board of supervision: Appeal: Costs.*

1. When the fact that a county has been erroneously charged for the support of an insane person in a state hospital and has paid therefor is established in the manner prescribed by the statute, it becomes the imperative duty of the state board of supervision, under sec. 2, ch. 229, Laws of 1881, to rectify the mistake by granting the certificate therein prescribed.

2. The state board of supervision having denied an application by a county for the correction of an error by which the county had been charged and had paid for the support of certain insane persons in a state hospital, and to have the future support of such persons charged to the state, the county was entitled, under ch. 233, Laws of 1883, to appeal from that decision to the circuit court. [Whether that statute gives an appeal from a decision of the board upon an application for a correction in the accounts between the hospital and a county, where no question is raised as to the liability of the county for the future support of an insane person, not determined.]

3. When, upon the appeal in such a case, it has been determined by the circuit court that the support of such persons is not and never was chargeable to the county, it becomes the duty of the board of supervision to give the certificate prescribed by sec. 2, ch. 229, Laws of 1881, for the amount of the erroneous charges made against and paid by the county; but it should not give a certificate upon which the county can get credit for the costs recovered upon the appeal.

PETITION for a writ of *mandamus.* The following statement of the case was prepared by Mr. Justice TAYLOR as a part of the opinion:

The petition of the relator asks the court to grant a writ of *mandamus,* directed to the respondent, commanding it

to make a certificate as prescribed by sec. 2, ch. 229, Laws of 1881, and deliver the same to the secretary of state, certifying that there has been erroneously charged to the county of *Grant*, for the maintenance of certain insane persons mentioned in said petition, the sum of $1,320.56, and that said sum has been erroneously paid by said county to, and received by, the state for the support of said insane persons. The facts set forth in the petition for the writ, and which are admitted to be true by the respondent, are substantially as follows:

On the 12th day of May, 1879, James Foster, George Ring, Charles Richards, and John Pedro were committed to the Wisconsin Hospital for the Insane by the order of the county judge of said county; that they were maintained in said hospital from the date of their commitment down to the 30th of September, 1882, and the said county was during all that time charged with so much of the expense of their maintenance as sec. 595, R. S., requires the county in which insane persons reside to pay, and for such expense the said county paid to the state the sum of $1,320.56; that the state has never refunded the said sum to said county, so paid for the support of said insane persons, or any part thereof; that on the 30th day of August, 1883, the county of *Grant* made application under the provisions of ch. 229, Laws of 1881, to the *State Board of Supervision of Wisconsin Charitable, Reformatory, and Penal Institutions.* The application was in writing, and reads as follows, after the address: "The undersigned, R. C. Orr, the district attorney of *Grant* county, for and on behalf of said county, respectfully represents and shows to your honorable board that James Foster, George Ring, Charles Richards, and John Pedro were, on the 12th day of May, 1879, by an order of the county judge of said county, committed as insane to the Wisconsin State Hospital for the Insane at Mendota; . . . that said patients were not residents of *Grant*

county, and that G. D. Streeter, the sheriff, and George Clementson, the chairman of the county board, of said county, made affidavits that the residence of said insane persons was unknown and could not, after due diligence, be ascertained; and that said affidavits were filed with the proper officials at said hospital, and an entry made on the books of said hospital opposite the names of each of said patients, to wit, 'state at large,' yet the said county of *Grant* was by mistake charged with, and has paid for, the support of said patients the following sums, to wit,"— setting forth at length the several sums charged for each such patient and paid by the county in each of the years 1879, 1880, 1881, and 1882, and amounting in all to the sum above stated. The petition claimed other mistakes in regard to charges made for other persons, but all claims for such other charges were abandoned, and no claim is now made except for the four persons above named, and for the sums paid by the county for their support. The application contained the following prayer: " And your petitioner prays that your honorable board allow said county of *Grant* a credit of $—— for errors committed against said county in the accounts of the Wisconsin State Hospital for the Insane for money paid to the state as aforesaid for the support of said James Foster [and the others named]; and that your honorable board order and direct that the disbursements for the support of said James Foster [and the others] from and after the 30th day of September, 1882, be charged to the state of Wisconsin."

The petition for the writ of *mandamus* further shows that the board of supervision ordered the claim of the county in regard to the four named insane persons to be tried separately, and a separate hearing was had on each of said claims before the board, and on the 30th day of April, 1884, said board decided the application as to each of said claims against the county, and made the following

order in each case: "The above-entitled matter having been brought to a hearing upon the testimony submitted and argument of counsel March 27, 1884, and continued to this day for further consideration, and upon such consideration said board not being satisfied that the relief asked for should be granted, it is now, on motion of H. W. Chynoweth, assistant attorney general, ordered and adjudged that the relief asked for be, and the same is hereby, denied, and the application therefor dismissed. Dated," etc. Signed by the president of the board.

From these final orders of the board of supervision, appeals were taken to the circuit court of Grant county. In the circuit court the cases were consolidated and tried together. The attorney general appeared in the circuit court, and moved to dismiss such appeals on the ground that the court had no jurisdiction. This motion was overruled, and the cases were tried by a jury, and after hearing the evidence and the arguments in the case the jury returned a special verdict as follows: " (1) Was the said insane person, James Foster, a resident of *Grant* county upon May 12, 1879, when he was committed to the Wisconsin State Hospital for the Insane at Mendota? *Answer*. No. (2) Of what county was said insane person, James Foster, a resident at said date? *A.* Unknown to the jury. (3) To what county in this state is said insane person, now an inmate of said hospital, chargeable? *A.* Unknown to the jury. (4) Is said insane person, James Foster, chargeable to the state at large? *A.* Yes." A like verdict was found as to the other three insane persons.

Upon the rendition of said verdict the circuit court entered the following order and judgment: "And thereupon the court did decide and adjudge that the above-recited judgment of said *Board of Supervision of Wisconsin Charitable, Reformatory, and Penal Institutions*, made April 30, 1884, should be reversed; and said insane person, James Foster, on the 12th

of May, 1879, when he was committed to the State Hospital for the Insane at Mendota, was not a resident of *Grant* county; that it is not known to what county, if any, in said state, said insane person, now in said hospital, is chargeable, and that he is chargeable to the state at large; and that said county of *Grant,* as against the state of Wisconsin, is entitled to its costs in this appeal, taxed at the sum of $58.97." After the judgment upon the appeal, the county applied to the board, and requested that the board make and deliver to the secretary of state a certificate setting forth the fact that said county had been erroneously charged with and had paid to the state said sum of $1,320.56 for the support of said insane persons, and said board refused to make and deliver such certificate.

For the relator there was a brief signed by *Clark & Mills,* and oral argument by *J. T. Mills.*

*L. K. Luse,* Assistant Attorney General, for the respondent.

TAYLOR, J. Upon the foregoing statement of facts we think the board of supervision should make the certificate asked for by the county of *Grant.* It is evident that ch. 229, Laws of 1881, was enacted as a remedial act for the purpose of having the question speedily determined what county in the state or whether the state at large should pay for the partial support of the insane in its hospitals, as required by sec. 595, R. S., and it conferred the power of such determination upon the board of supervision. The only question to be settled under the laws of this state, to fix the charge upon a county or the state, is the question of residence at the time of commitment to the hospital. See said sec. 595, R. S. If the insane person is a resident of any county in the state when committed, then such county is charged, by sec. 595, with his partial support, and if he has no residence in any county in the state, then the entire

support falls upon the state. The object of ch. 229, Laws of 1881, was to confer upon the board of supervision the power to determine this question of residence, and so fix upon the proper county, or upon the state, the support of insane persons. After conferring this power on the board by the first section of said ch. 229, the second section makes it the duty of the board to correct errors committed in the accounts of the state hospitals and any county on account of the support of the insane; and this section, impliedly at least, makes it the duty of the board, when it has determined that a mistake in such account has been made, to rectify it by giving a certificate to the secretary of state showing the amount of such mistake, so that the secretary of state may give proper credit to the county against which the mistake has been made, in the next assessment of taxes against such county.

When the mistake is once established in the manner prescribed by the statute, it appears to us that the duty of rectifying it by giving the certificate prescribed in sec. 2 of said ch. 229, is imperative. This seems to be a reasonable construction of said ch. 229, Laws of 1881; since, previous to the passage of such act, such mistakes could only be corrected by an act of the legislature, after an investigation of the matter by the state board of charities and reform. See ch. 276, Laws of 1880. In this case, under the admissions made by the board of supervision, there does not seem to be any just reason for their refusal to make the proper certificate, so that the county may get its pay without being at the expense and delay of bringing suit against the state, or by an application to the legislature. The allegations of the petition which are admitted to be true establish the mistake beyond a controversy.

It is urged by the learned attorney general that ch. 233, Laws of 1883, does not give any appeal from the decision of the board of supervision made in this case, and so the

circuit court had no jurisdiction of the case and its judgment can have no effect in reversing the order of the board, and, such order being adverse to the claim of the petition, no case is made by the petition against said board. The argument of the learned attorney general, if we understand it, is this: He claims, and we think properly, that the object of sec. 1, ch. 229, Laws of 1881, is to confer the power upon the board of supervision to determine the question, in a dispute between two counties in the state or between a county and the state, as to the residence of the insane person or persons about whose support there is a contest, and, having determined that matter, to make an order naming the county which is liable for such support; and if the board shall find that no county in the state is liable, then it shall find the state chargeable therewith, and make an order to that effect. It is said that because it is stated in the petition that, when the said insane persons were committed to the hospital, proofs were presented showing, or tending at least to show, that they were not residents of the state, and that an entry was made on the books of the hospital opposite their names, "state at large," consequently there was and could be no contest as between the state and the county as to whether the county was liable for their support. The petition, however, shows that, up to the time the petition was presented, the state, notwithstanding such entry on its books, had charged their support to the county, and that the county had been compelled to pay for such support. And there is nothing in the application to the board of supervision, or in any part of the record in this case, which shows or tends to show that the state did not intend to charge the county with the support of said insane persons subsequently to September 30, 1882. The application to the board shows a good case on behalf of the county against the state, at the time the same was presented, under sec. 1 of said ch. 229, Laws of 1881; since the state, not-

withstanding the entry in the books of the hospital, claimed that the county of *Grant* was liable for the support.

The statement made in the brief of the attorney general that the application to the board of supervision was simply an application to have the error corrected by which the hospital had charged the support of these insane persons to said county from the time of their commitment until the 30th of September, 1882, and that the board was not asked to determine the question as to whether the state or the county should be chargeable for their future support, is not strictly correct. It is true, the application prays that the error in charging the county for their support from the date of their commitment to September 30, 1882, be corrected, and that the county may have a credit with the state for the amount so erroneously charged against and paid by it, but it also prays "that the board order and direct that the disbursements for the support of said James Foster [and the others] from and after the 30th of September, be charged to the state of Wisconsin." This relief prayed is just what they were entitled to under the allegations of the petition in this case. It may be that the state has made no claim upon the county for the support of these insane persons since September 30, 1882, but no proof of that fact can be found in this record, and, if it be a fact, the state may have omitted to make any further claim until the proceedings before the board were finally determined. Under the facts stated in the petition, the county was entitled to have a decision settling the question as to whether the state or the county should be chargeable for the future support of said insane persons. That decision has been obtained in a legal way, by the decision of the court upon the appeal from the decision of the board which denied the relief asked by the county. Whether the statute gives any appeal from a decision of the board in an application to have a correction made in the accounts between the hospital and a county,

where no question is raised as to the liability of the county for the future support of an insane person, need not be determined in this case. In this case the county was clearly entitled to an order by the board that the future support of these insane persons should be charged to the state, and not to the county of *Grant*. This order was refused by the board, and the right of the county to appeal from their decision is clearly given by ch. 233, Laws of 1883.

The decision on the appeal finds that these insane persons were not residents of *Grant* county when committed, and that they were not residents of this state at that time, and so necessarily finds that the county has been erroneously charged with the said sum of $1,320.56, and is entitled to a credit with the state for that sum. That the county may get such credit, it is entitled to have the certificate of the board of supervision provided for in sec. 2, ch. 229, Laws of 1881. We think that, upon the question whether the county is entitled to the certificate of the board mentioned in sec. 2 of said ch. 229, the same force and effect must be given to the decision of the court upon an appeal from the order of the board as should be given to the order of the board itself. If the board had decided in the first instance that the support of said insane persons was not and never had been chargeable to the county, then it would have determined the fact that the charges made against the county and paid by it were erroneous charges; and, having so determined, the giving of the certificate prescribed by sec. 2, ch. 229, is a mere ministerial act, and not a judicial one. It is in the nature of an execution to carry into effect the judgment of a court. The construction here given to ch. 229, Laws of 1881, as to the duty of the board to make a certificate to have the mistake in the account against the county corrected and credited to the county, when the board has adjudged that a mistake has been made, is the construction given to said chapter by the board itself. Such an

order and certificate was made by the board in the case of *State ex rel. Wood Co. v. Dodge Co.* 56 Wis. 79, 87.

We are of the opinion that the board has no authority to give a certificate upon which the county can get credit for the costs recovered on the appeal. The board is only required to give a certificate for the amount of the erroneous charges made against and paid by the county. If the county seeks a return of its money in the manner prescribed by said ch. 229, we find nothing in said chapter which authorizes or requires the board to give a certificate for any sum except the amount of the erroneous charges. This excludes the right to have a certificate for the costs of the proceeding, or for interest on the claim. The only remedy the county can have for the costs and interest is by an application to the legislature.

The parties have stipulated that if this court is of the opinion that upon the facts set out in the petition the relator is entitled to an alternative *mandamus*, a peremptory writ may issue without any further proceedings in the case.

*By the Court.*— It is thereupon ordered and adjudged by this court that a peremptory writ of *mandamus* be issued out of and under the seal of this court, directed to the *Board of Supervision of Wisconsin Charitable, Reformatory, and Penal Institutions*, commanding said board to make and file with the secretary of state of this state a certificate certifying that the county of *Grant* has been erroneously charged by the state, and has erroneously paid to the state, the sum of $1,320.56, for the support and maintenance of James Foster, George Ring, Charles Richards, and John Pedro, insane persons, in the Wisconsin Hospital for Insane at Mendota, from the 12th day of May, 1879, to the 30th day of September, 1882, and that said county is entitled to a credit against the state for said sum of $1,320.56.