BAKER, Appellant, vs. DEPARTMENT OF TAXATION, Respondent.*

*March 12—May 1, 1945.*

* Motion for rehearing denied, without costs, on June 15, 1945.

*Norman L. Baker* of Milwaukee, *in pro. per.,* for the appellant.

For the respondent there was a brief by the *Attorney General* and *Harold H. Persons,* assistant attorney general, and oral argument by *Mr. Persons.*

FRITZ, J.   On this appeal the principal question is whether the assessor of incomes for Milwaukee county and the Wisconsin board of tax appeals (hereinafter called the "board") erred in determining (1) that Baker, whose domicile had been in Milwaukee county continuously since 1904, did not, beginning on January 1, 1941, and continuing during that year, in fact and as a matter of law, abandon his Milwaukee domicile and acquire a new domicile in Beulah, Michigan; and (2) that therefore his taxable income for the year 1941 was subject to taxation under ch. 71, Wis. Stats.   If the board's determination in those respects was warranted by the evidence and the record on the hearing before the board, then its decision and order were rightly confirmed by the circuit court's order from which Baker appealed, and there is no occasion to consider other questions raised by him in other respects.

Briefly stated, Baker's contentions are that beginning January 1, 1941, he decided that a house on land which he owned in Beulah, Michigan, should be and was selected by him in good faith as his permanent home and domicile, without any intention of his having a home or domicile elsewhere or of ever returning to Wisconsin; that he then abandoned all evidence of residence and had no permanent place of abode in Wisconsin, and did not there spend in the aggregate more than seven months in a year; that all his declarations, acts, and conduct are consistent with and prove his *bona fide* change of domicile to the new domicile established by him in Michigan; and that the only question involved is whether appellant in good faith intended to change his domicile.

Due consideration of all matters in the record, including Baker's testimony at the hearing on May 5, 1943, upon which the board's decision and order were based, discloses that the record well warranted the board finding the following facts stated in its decision. From 1907 to July, 1941, Baker owned and occupied a family dwelling house on Summit avenue in Milwaukee, which he conveyed to his wife in 1941. On his income prior to and including the year 1940 he paid, as a resident of Wisconsin, the income tax assessed thereon. In his income tax return filed in March, 1941, for his 1940 income, he made a declaration to the effect that he had changed his residence from Milwaukee, Wisconsin, to Beulah, Michigan. Upon his failure in 1942 to file a return for his 1941 income, the assessor on July 8, 1942, requested him to make such a return. On August 1, 1942, he stated in a return that Beulah, Michigan, was his legal residence and that in his view he was not subject to the income tax laws of Wisconsin. He omitted to state his gross income for 1941 or any statutory deductions. Thereupon, the assessor determined that he considered Baker domiciled in Wisconsin for 1941 and subject to its income tax laws, and that his gross income for 1941 was $13,166; and upon this he levied the assessment which is in question

herein. No deduction for personal exemptions was allowed to Baker, but in the income tax return filed for 1941 by his wife, who resided in the Summit avenue family dwelling place in Milwaukee, she claimed the full personal exemption of $17.50 allowable to husband and wife under sec. 71.05 (2) (b), Stats.

Ever since 1925, Baker has been continuously employed as an associate general counsel by the Northwestern Mutual Life Insurance Company (hereinafter called "Northwestern") at its general offices in Milwaukee, and his work was such that he had to travel frequently out of Wisconsin to attend to Northwestern's litigation or other essential duties incidental to his employment. In 1925 Baker constructed a summer residence on his land at Beulah, and there he and his family resorted, and he spent his three-week vacation and many week ends and holidays during the summer months, and frequently also during the early spring and late fall. He usually traveled there by car ferry between Milwaukee and Ludington, Michigan, and then to Beulah by automobile; and returned to Milwaukee each Monday morning by the same travel accommodations. He planned on retiring from his employment upon becoming eligible to pension in October, 1941; and resolved that he would change his legal domicile from Wisconsin to Michigan. In this he was prompted somewhat by his impression that he was being treated unfairly by an official charged with the statutory responsibility of assessing and enforcing the collection of income taxes in Milwaukee county. But early in 1941 Baker decided it would be inadvisable for him to resign his position with Northwestern because financial reasons then existing and the imminence of war made him hesitant to give up his well-paid employment; and because, in view of his heavy sense of responsibility to Northwestern as the result of his long years of highly useful service and association, he concluded it was his duty to see to a successful termination important litigation entrusted to his care,

which was pending throughout the country and would not be disposed of by the time of his anticipated retirement. In consequence of these circumstances he found it impossible to carry out his contemplated plan of living at Beulah during the entire year; but arranged to spend many week ends there, leaving Milwaukee by car ferry Friday night and returning to Milwaukee early Monday morning.

In attempting to support his claim that he was not in Wisconsin in the aggregate of more than seven months in the year, and as he found that because of existing restrictions on transportation he could not conveniently continue making week-end trips to Beulah, he often also traveled and spent week ends in Chicago, and returned to Milwaukee ordinarily on Monday morning in time to there perform the duties of his employment. Prior and up to 1941 Baker and his wife and others of his family made their home in their dwelling on Summit avenue, and there kept their household furniture, personal effects and belongings; but he claims that subsequently he arranged to put into operation his intention of abandoning Wisconsin as his domicile and establishing his new domicile at Beulah, Michigan, by he and his wife turning over active management of that home to their daughters-in-law, who came to live with them there at times shortly after their husbands (petitioner's sons) entered the armed services; but who at times went to live with their husbands. However, Baker and his wife were on friendly terms and continued to occupy a bedroom in that home, and he contributed to the cost of operating it, partly by turning over to his wife $100 per month for necessary expenses, and she rented it to the daughters-in-law, with the reservation that she and her husband be allowed to retain a "couple of rooms" in the attic. They gave up the occupancy of a sleeping room, which they had occupied on the second floor, and slept in an attic room, but continued to use the second-floor bathroom. During the period in which Baker claims to have abandoned his abode and

domicile in Wisconsin he frequently occupied that attic bedroom, and occasionally he slept in the second-floor bedroom or in a room he was using as his private office in a downtown Milwaukee building, which he managed and in which he had some financial interest. He spent but little time, if any, in Beulah in the winter months; and when for the greater part of the year 1941 his employment at Northwestern in Milwaukee required him to be there from Monday to Friday, inclusive, he slept at night as stated, either in the Summit avenue dwelling, or occasionally in the downtown building. His wife did not change her domicile but continued to live and reside during 1941, as she had in the past, in their Summit avenue dwelling, excepting that on occasions she visited Beulah with Baker, especially during his three-week vacation and the week ends of the summer months; and also accompanied him to Chicago on some of his week-end trips. He did not vote in Wisconsin after the fall election of 1940, and has not voted in Michigan.

Under and in view of the evidence as to the facts stated above, it was clearly within the province of the board to find and conclude, as it did, that during 1941, as theretofore, Baker, in the aggregate, spent and had his place of abode in Milwaukee, Wisconsin, for more than seven months; and that he did not, in January of 1941 or during that year, in fact actually abandon his domicile in Wisconsin or acquire a new domicile in Michigan, as he testified he had planned and intended to do upon discontinuing his employment at Northwestern and retiring on a pension, upon reaching the retirement age of seventy in October, 1941. From his own testimony as to his intention "to make Beulah his domicile during 1941" it is evident that the making of such a change in domicile was conditioned upon his discontinuing and retiring from his employment on the pension to which he was to become eligible upon reaching the age of seventy years in October, 1941. However *bona fide* his intention was in that

respect, until he in fact actually abandoned his existing permanent domicile in Milwaukee, and in lieu thereof established and acquired, by the actual physical and continuing permanent use and occupancy by him of another place of abode as his new domicile elsewhere than in Wisconsin, his old domicile in Milwaukee continued to be, as a matter of law, his domicile as it was in all of the years from 1907 to and during the year 1941. As this court has said:

"The well-established rule with respect to change of residence or domicile is thus stated in *Will of Eaton,* 186 Wis. 124, 133, 202 N. W. 309: 'A domicile once established is not lost until a new one is acquired. Every one must at all times have a domicile somewhere. Where an actual domicile has once been established, two things are necessary to create a new domicile, first, an abandonment of the old domicile, and second, the intention and establishment of a new domicile. The mere intention to abandon a domicile once established is not of itself sufficient to create a new domicile, for before a person can be said to have changed his domicile, even though he manifests an intention to abandon the old domicile, a new domicile must be shown.' " *Dromey v. Tax Comm.* 227 Wis. 267, 270, 278 N. W. 400.

"A domicile, once established, is presumed to continue until a new domicile has been effectuated. . . . One may change his domicile for any reason or for no reason. . . . But whether he changes his domicile or not will depend upon intent and actual change of residence. As to these questions of fact the usual rules of evidence apply." *Will of Heymann,* 190 Wis. 97, 99, 208 N. W. 913. See also *Hall v. Hall,* 25 Wis. 600.

The determination of a person's domicile or of his choice of domicile involves the adjudication of questions of fact which must be settled by recourse not only to an analysis of the intention to establish a new domicile, but, more significantly, by weighing his overt acts which bear upon his carrying out of that intention so as to ascertain whether or not he had actually abandoned his old domicile. There must be

more than an intention to acquire a new or different legal domicile. Until the old domicile has been actually abandoned and an intended new home has been actually and permanently occupied and established elsewhere, the latter cannot be considered the new domicile. See 1 Beale, Conflict of Laws, pp. 149–153, pars. 19.1, 19.2, 20.1, and 20.2; Restatement, Conflict of Laws, p. 38, sec. 19, and p. 39, sec. 20.

In this case the burden of proof rested upon Baker to establish by competent and clear, convincing and satisfactory evidence that he had in reality actually abandoned his domicile in Wisconsin and that he had actually by permanent occupancy established a new domicile in Beulah, Michigan. *Dromey v. Tax Comm., supra; Will of Eaton, supra; Hall v. Hall, supra.* His testimony as to his expressed intentions and declarations to establish a new domicile elsewhere are admissible and entitled to weight, but such manifestations of intention cannot in and of themselves determine the case, and must be considered in connection with the background of his acts. *Will of Heymann, supra; Feehan v. Tax Comm.* 237 Mass. 169, 129 N. E. 292; *Wagner v. Scurlock,* 166 Md. 284, 170 Atl. 539; *Commonwealth v. Davis,* 284 Mass. 41, 187 N. E. 33; *In re Ozias' Estate* (Mo. Kansas City Court of Appeals, 1930), 29 S. W. (2d) 240; *In re Dorrance's Estate,* 309 Pa. 151, 163 Atl. 303. Where these declarations, intrinsically self-serving in effect, seriously conflict with the acts and conduct of the person making them, they are of such weakness that they may be disregarded. *In re Harkness' Estate,* 183 App. Div. 396, 170 N. Y. Supp. 1024. With these rules applicable to the evidence in the record herein, the board was warranted in finding and stating in its decision, in addition to the facts mentioned above, also the following. Although Baker intended and claims he was attempting to establish a new domicile in Beulah, he was in fact "actually carrying on in many significant respects the same routine, the same living arrangements and the same usual daily activities

which he had conducted prior to 1941." And during that year he continued to keep in Milwaukee his bank account and also kept his bonds, stock certificates, and personal belongings in a private box in Northwestern's vault; he contributed, through funds supplied by him to his wife, the sums necessary for the payment of taxes assessed against his Summit avenue dwelling, and continued to join in the use thereof for his personal enjoyment, and permitted the telephone listing for the telephone installed therein to remain in his name, and his mail was forwarded to him there from Beulah; he held a Wisconsin driver's license which was applied for in Wisconsin in September, 1941, and in his application for renewal listed his post-office address as Madison Building, 623 N. 2nd Street Milwaukee, and also applied for and received a Wisconsin automobile license for one of his automobiles in 1941; and through his family he was registered for government ration books in Milwaukee.

Consequently the assessor and likewise the board and subsequently the circuit court rightly concluded that Baker was domiciled in Wisconsin during all of the year 1941, and that he was subject to the assessments in question; and therefore the circuit court's order confirming the findings and order of the board must be affirmed.

*By the Court.*—Order affirmed.

Barlow, J., took no part.