### WILL OF EATON.

*January 15—February 10, 1925.*

*Wills: Probate: Domicile of testator: Evidence: Written and oral declarations of testator: Question of fact for court: Evidence: Sufficiency: Widow's allowance in estate of nonresident.*

1. The written declaration of testator recognizing California as his place of residence is entitled to greater weight than oral declarations to the contrary. p. 131.
2. While written declarations as to residence in a deed or will are not conclusive, they are very persuasive on the subject. p. 132.
3. A domicile once established is not lost until a new one is acquired; and where an actual domicile has once been established, an abandonment of the old and an intention to establish and the establishment of a new domicile are necessary to create a new domicile. p. 133.
4. In proceedings to probate a will the evidence is *held* to raise an issue of fact for the court to determine whether the residence of decedent at the time of his death was in Wisconsin or in California; and the decision of the trial court on the subject of domicile is therefore not disturbed. p. 134.

Will of Eaton, 186 Wis. 124.

5. Where testator at the time he made his will and at the time of his death was a resident of California, the primary jurisdiction to probate his will was at the place of his residence. p. 134.
6. Under secs. 3789 and 3790, Stats., providing for ancillary administration, the court properly refused to proceed with the probate of the will upon finding that decedent was a nonresident. p. 135.
7. In the administration of a decedent's estate, ancillary proceedings, in view of sec. 3793, Stats., are primarily for the benefit of creditors residing within the state; and when it is made to appear that there are no such creditors the court should decline to proceed further with the administration. p. 136.
8. In proceedings to probate a will in which the court found that decedent was a nonresident, it was without jurisdiction to make an allowance for the widow. p. 136.

APPEAL from an order of the county court of Green county: W. A. LOVELAND, Judge. *Affirmed in part; reversed in part.*

This is an appeal from an order of the county court refusing to admit to probate the last will and testament of J. H. Eaton, deceased, and from an order of allowance to his widow.

The deceased, J. H. Eaton, died on the 14th day of March, 1924, being then of the age of seventy years, at Mechanicsville, New York, having on the 6th day of September, 1923, executed at Monroe, Green county, Wisconsin, an instrument purporting to be his last will and testament. Such instrument is as follows:

"I, J. H. Eaton, of Venice, in the county of Los Angeles, in the state of California, being of sound mind and memory, do make, publish, and declare this my last will and testament, hereby revoking all former wills, bequests, and devises by me made:

"First. One thousand dollars cash to be given to Mettie J. Monroe, of Monroe, Wis.

"Second. To my wife, Mary Ellen Eaton, the sum of one dollar, as there is no community property and that I have already given her a just and proper amount during my lifetime.

---

---

"Third. To my nephew, *Jay H. Eaton,* all the balance of my estate.

"I do hereby constitute and appoint *Jay H. Eaton* executor of this my last will and testament without bond.

"In witness whereof, I have hereunto set my hand and seal this 6th day of September, A. D. 1923.

"J. H. EATON.   (L. S.)

"The foregoing instrument was signed, sealed, published, and declared by the said J. H. Eaton as and for his last will and testament, in the presence of us, who, at his request, in the presence and in the presence of each other, have hereunto subscribed our names as attesting witnesses; and said testa. . . . was then of sound and disposing mind and memory.

"G. Clarke Dodge.

"Grace Schroeder."

Prior to the year 1911 the deceased was a resident of Monroe, Wisconsin, and during such year he married *Mayme K. Eaton* in Texas, and in the following year proceeded to Venice, California, where he established a residence, engaged in business, and lived with his wife until in July, 1923. He then left Venice, leaving his wife there, and came to Monroe, Wisconsin, where he remained until the beginning of October, 1923. While living in Venice he was the owner of real estate there, of a value estimated between $5,000 and $7,000, and this real estate, before he departed for Monroe, was transferred to his wife. He also had about $9,000, which he deposited in the Citizens Bank of Monroe in the name of his brother George, to be held in trust for him. He also was the owner of real estate at Monroe of the value of about $5,000.

After the death of the deceased, the nephew, *Jay H. Eaton,* filed the alleged will with the county court of Green county and made application to the court for the probate of the same. In due time the widow, *Mayme K. Eaton,* appeared in the probate proceedings and objected to the probate of the will upon the grounds, first, that the court lacked

Will of Eaton, 186 Wis. 124.

jurisdiction because the deceased at the time of his death was not a resident of Green county, Wisconsin, nor of the state of Wisconsin; second, that the instrument was not executed in the manner provided by law; third, that the execution of the instrument was procured by the exercise of undue influence; and fourth, that at the time of the execution of the will the deceased was of unsound mind and not possessed of sufficient mental capacity to make a will. At the conclusion of the hearing the court made findings of fact that at the time of his death the deceased was a resident of the state of California, and that at that time he left certain real estate in the state of Wisconsin and also certain personal property within the state of Wisconsin, part or all of which may be community property under the laws of the state of California; that the convenience of the parties and witnesses and the interests of justice would be best served by delaying the consideration of the question whether said instrument should be admitted to probate in Wisconsin until the courts of California had the opportunity to pass on the questions as to the validity of said instrument. The court also declined to proceed further with the hearing of evidence as to whether said instrument or any other instrument should be admitted in Wisconsin as the last will and testament of said deceased, or to determine whether said deceased died testate or intestate, until after the courts of California shall have had reasonable opportunity to act on said question, and the hearing of such petition was held open until such time.

Upon an application made by the widow to the county court of Green county an order was made by the court allowing her the sum of $500 as a widow's allowance under the statute, up to June 5, 1924, and the further sum of $50 per month during the pendency of the proceedings for the settlement of the estate.

*J. M. Becker* of Monroe, for the appellant.

For the respondent there was a brief by *R. J. Grode* of

Nekoosa and *Richmond, Jackman, Wilkie & Toebaas* of Madison, and oral argument by *Mr. Grode* and *Mr. H. M. Wilkie.*

DOERFLER, J.    Counsel for the appellant first challenges the finding of the court that the deceased at the time of his death was a resident of California. For about thirteen years before his death the deceased lived with his wife in Venice, California.    He established a home there and engaged in business.    It therefore must be conceded that until the month of July, 1923, he had a fixed residence in California, and such state became his place of domicile.    While a resident of California during the period aforesaid he made periodical trips to Monroe, where he visited his relatives and renewed his old acquaintanceships.    His visit, therefore, during the summer of 1923 at Monroe, in and of itself had no particular significance with respect to any change of residence. Appellant's counsel, however, strenuously contends that there are many facts and circumstances which appear in the evidence which establish quite conclusively the abandonment of his residence in California and the establishment of a new residence in Monroe.    Among such facts and circumstances relied upon are the following:

That before leaving California he transferred to his wife the homestead; that he took with him a large sum of money, aggregating about $9,000, and deposited the same in the Citizens Bank of Monroe in the name of his brother George, with the understanding that such sum should be held in trust for him; that when he left California early in July, 1923, he had had some difficulties with his wife, and that he departed on unfriendly terms, and from the date of such departure until the time of his death in March, 1924, he did not return to Venice or to his wife, and his wife did not again see him alive; that in October, 1923, while his health was failing, he traveled to San Diego, California, with a

nurse whom he met in Chicago, and who attended him, and at her request proceeded to Mechanicsville, New York, where he remained at her home and under her care until March, 1924, when he died; that all of the living relatives of the deceased reside in the vicinity of Monroe, and that all of the beneficiaries under his will, excepting his wife, reside at Monroe, and that all of his property, real and personal, of which he was the owner at the time of his decease is located at Monroe; that it appears from the evidence of his wife that she was unable to locate any property belonging to the deceased in the state of California; that both before and after the execution of his will he made statements to a number of his friends and acquaintances at Monroe that he was through with Venice, California; that he had settled with his wife; and that he had returned to Monroe to make his future home, although he might spend his winters in a warmer climate, on account of the rigorous climate of Wisconsin during the winter months. It must be conceded that the showing so made strongly evidenced not only an intention to abandon his residence in California, but to establish a residence at Monroe, Wisconsin.

The respondent, on the other hand, made a showing by documentary evidence which is quite convincing, that the deceased at the time of his death still retained his residence in California. The will, which is dated September 6, 1923, and which was executed at Monroe, recites that the testator's residence is in Venice, in the county of Los Angeles, in the state of California. In one of the paragraphs of his will he bequeaths to his wife the sum of one dollar, and recites that there is no community property, and that he had previously bestowed upon her a proper and just amount of his estate. Before leaving Venice he executed a deed in blank of certain property of which he was the owner at Monroe, Wisconsin, and procured the signature of his wife to such deed upon the pretext that he intended to use the proceeds

of the sale in investment in California property. This deed, however, he contemplated to deliver to his nephew, *Jay Harvey Eaton,* a son of his brother George Eaton, but the deed not being properly witnessed as required by the laws of Wisconsin was deemed ineffectual by him and for that reason was not made use of. On August 13, 1923, while the deceased was at Monroe, Wisconsin, it appearing that the deed above referred to was ineffectual, he executed a new deed of property at Monroe, Wisconsin, to his nephew, *Jay Harvey Eaton.* This deed, among other things, contained the following:

"This conveyance is intended as and for and does constitute an absolute conveyance of all my right, title, and interest in and to said above described property; that said described property is not a homestead, nor has it been occupied by said grantor and his wife as a homestead, and for that reason my wife does not join in this conveyance, not being required to do so under the laws of the state of Wisconsin applying to land in this state. *Said grantor and wife being nonresidents.*"

The acknowledgment is in the following form:

"Be it remembered that on the 13th day of August, 1923, personally came before me this day the above named J. H. Eaton, of Venice, California, to me known to be the person who executed the said deed, and acknowledged the execution thereof to be his free act and deed for the uses and purposes therein mentioned. . . ."

The notary, one Corson, before whom the last named deed was executed, testified that at the time of its execution he was not familiar with the rule that a nonresident wife need not sign a deed as to real estate owned by the husband in Wisconsin. The deceased was a lawyer, admitted to practice both in Wisconsin and California. It becomes quite evident, therefore, that the recital as to the Monroe property not being a homestead, and the recital in the deed that the grantor and his wife were nonresidents, originated with the deceased.

In testifying as a witness, Corson, the notary, made the statement that during the summer of 1923 the deceased told him that he was through with California and was going to make Monroe his home. On cross-examination, in order to explain the recitals contained in the deed wherein the deceased's residence was stated to be in California and that both he and his wife were nonresidents, he testified that he took such statements from a former deed. The only other deed besides the one dated August 13, 1923, referred to in the evidence, is the one which was not properly witnessed, and an examination of this deed revealed the fact that it contained no recital whatever of the residence of the deceased or his wife, nor does it contain a recital that they are nonresidents.

This, in substance, constitutes the evidence adduced on the hearing, and from such evidence the court found that the deceased at the time of his death was a resident of the state of California.

That the deceased left no property in California at the time he came to Wisconsin in July, 1923, is supported by the evidence of his wife, who testified that she was unable to locate property in such state. This does not conclusively establish that there was no property in California, but merely establishes the fact that the witness was unable to locate property there. The evidence does not affirmatively show that the $9,000 deposited in the Citizens Bank of Monroe was taken by the deceased with him at the time he left Venice in July, 1923, but it must be conceded, under all the facts and circumstances of the case, that a strong inference arises that such sum was at that time taken with him when he went to Monroe.

The recital in the will that the testator is of Venice, California, was inserted in his own handwriting. We have, therefore, a written declaration of the testator, made about two months after he left California, in which he deliberately recognized California as his place of residence. Such a

written declaration is entitled to greater weight than oral declarations.  19 Corp. Jur. 439.  In the provision in his will where he bequeathed to his wife the sum of one dollar, he recites that there is no community property.  Community property is recognized under the laws of the state of California, but not under the laws of Wisconsin.  Eaton being a lawyer, admitted to practice in both states, evidently was aware of this fact.  This reference to community property also strongly indicates that the testator, at the time he executed the will, had not concluded to establish his domicile in Wisconsin.  While written declarations as to residence in a will are not conclusive, nevertheless they are very persuasive on the subject.  Less than a month prior to the execution of the will the testator executed a deed of property in Monroe to his nephew.  This deed also recites that the deceased was of Venice, California, and it contains a statement that he and his wife are nonresidents.  The notary also, in the acknowledgment, certified that the deceased, of Venice, California, came before him, and that he duly executed the deed.  What has been heretofore said with reference to the declarations in the will is equally applicable to the statements contained in the deed.

The testimony of the notary before whom the deed was executed and acknowledged, to the effect that the deceased on a number of occasions at or about that time made statements in the course of business transactions that he was through with California and that he intended to make Monroe his home in the future, is entitled to little or no weight.  In the first place, these oral declarations have not the dignity of written statements nor are they entitled to the same weight.  When the notary attempted to explain the recitals as to domicile contained in the deed by making the claim that he had copied such statements from another deed, and it appearing from the evidence that the only other deed referred to was the incomplete deed, he quite effectually impeached his own testimony.

A domicile once established is not lost until a new one is acquired. Every one must at all times have a domicile somewhere. Where an actual domicile has once been established, two things are necessary to create a new domicile,—first, an abandonment of the old domicile, and second, the intention and establishment of a new domicile. The mere intention to abandon a domicile once established is not of itself sufficient to create a new domicile, for before a person can be said to have changed his domicile, even though he manifests an intention to abandon the old domicile, a new domicile must be shown. 9 Ruling Case Law, p. 553, § 18.

"The place of a man's dwelling house is regarded as his domicile in contradistinction to any place of business, trade, or occupation. . . . Of course, long continued habitation is an important circumstance in determining the question of domicile, in the absence of other evidence showing the avowed intention; but no definite period of time is necessary to create a domicile unless the law so provides. One day is sufficient provided the *animus manendi* exists. . . ." 9 Ruling Case Law, 541.

Many other facts may be shown to indicate the establishment of a new domicile,—the exercise of a franchise; the payment of income taxes; the place of a man's dwelling house; the place of his business, trade, or occupation, etc. In the instant case the testimony shows that the deceased had been in the habit of paying an annual visit to his relatives and friends living in and around Monroe. The time spent in Monroe in 1923 did not extend over a period of about three months. His wife, with whom he had lived for about twelve years, did not accompany him to Wisconsin, but continued her residence in Venice. He did not purchase or lease a home in Monroe, nor did he establish permanent quarters for residence purposes, but lived during a large portion of the time there, in a hotel. He expressed great dissatisfaction with the climate of Wisconsin, particularly objecting to the cold winters. These facts, when taken into consideration in connection with his declarations contained in

the will and in the deed, squarely raised an issue of fact for the court to determine, and from such facts the court decided that the residence of the deceased at the time of his death was in the state of California.    The decision of the trial court, therefore, on the subject of domicile cannot be disturbed.

Having found that the testator at the time he made his will was a resident of California, the primary jurisdiction to probate the will was at the place of his residence.    In Thompson on Wills, § 487, it is said:

"The probate of a will in the first instance should be made in the place of the testator's domicile at the time of his death. What the last domicile of the testator may be is to be inferred from all the facts and circumstances of the case.    It embraces the fact of residence and the intention to remain indefinitely.    A mere temporary residence in any county does not give the courts of that county exclusive jurisdiction. The will must be probated in the place of the testator's domicile, regardless of where he died or where the will was executed."

In Page on Wills, § 315, it is said:

"A will disposing of property should be offered for original probate in the court within whose jurisdiction testator was domiciled at the time of his death, irrespective of where he might have died."

This is also the rule in Massachusetts, as is shown by the case of *Rackemann v. Taylor*, 204 Mass. 394, 90 N. E. 552. See, also, other cases referred to in the opinion in the *Rackemann Case.*    Such is also the holding of this court in *Gailey v. Brown*, 169 Wis. 444, 171 N. W. 945, and *Will of Harker*, 172 Wis. 99, 178 N. W. 246.

Sec. 3789 of the Statutes provides:

"Any will duly admitted to probate without this state and in the place of the testator's domicile may be admitted to probate and recorded in this state by duly filing an exemplified copy of said will and of the record admitting the same to

probate; and such will shall then have the same force and effect as if originally proved and allowed in this state."

Sec. 3790 provides:

"When a copy of any such will and the probate thereof, duly authenticated, shall be produced by the executor or other person interested therein to the county court such court shall appoint a time and place of hearing, and cause notice thereof to be given as required by section 3787. If on the hearing it shall appear to the court that the order or decree admitting such will to probate was made by a court of competent jurisdiction and is still in force, the copy and the probate thereof shall be filed and recorded, and the will shall have the same force and effect as if it had been originally proved and allowed in the same court."

These statutes make ample provision for ancillary administration, and they expressly recognize the primary right of the domiciliary court to pass upon the probate of the will. Pursuant to these statutory provisions and the decisions of this court construing such statutes above cited, the county court, when it became satisfied that the deceased's domicile at the time of his death was in California, declined to proceed further with the proceedings instituted to probate the will, and the course so pursued was, in our opinion, correct.

Upon an application made to the county court of Green county that court made an allowance, as heretofore stated, for the support of the widow. Appellant's counsel maintains that the county court was without jurisdiction to make an order of allowance for the widow, having held that the deceased was a resident of California. The California court having jurisdiction of probate matters granted administration in the matter of the estate of the deceased. Upon an application thereafter made to such court an order was entered allowing the widow a certain sum for her support and maintenance during the period of administration. We have, therefore, two orders of allowance to the widow—one by the

Wisconsin court and the other by the California court. The provisions on widow's allowance in California are substantially like those in Wisconsin. Sub. (2) of sec. 3935, Stats., provides for an allowance to the widow and minor children out of the personal estate or the income of the real estate of the deceased. It is argued by counsel for the respondent that inasmuch as this section of the statute does not differentiate between residents and nonresidents, the Wisconsin court has full power and authority to order an allowance for the benefit of a widow.

Sec. 3793 provides that "When any will shall be allowed as mentioned in section 3790 the county court shall grant letters testamentary or letters of administration with the will annexed, except in cases where it shall satisfactorily appear to the court that there *are no debts due from the testator or from his estate to parties residing in this state;* and such letters testamentary or letters of administration shall extend to all the estate of the testator in this state. . . ." It will thus appear from a reading of this statute that letters testamentary or of administration shall be granted by the proper court of this state, except in cases where it shall satisfactorily appear to the court that there are no debts due from the testator or from his estate to parties residing in this state. The ancillary proceedings in this state, therefore, primarily are for the benefit of the creditors residing in this state, and when it is made to appear that there are no creditors in this state the court should decline to proceed further with the administration of the estate. There is no suggestion herein that the estate of the deceased was insolvent, as appeared in the *Estate of Hanreddy,* 176 Wis. 570, 186 N. W. 744. Ancillary proceedings, under the plain provisions of the statutes, therefore being authorized for the benefit of creditors, the Wisconsin court has no jurisdiction to make an allowance for the benefit of a widow, for such allowance is not only controlled by the law of the state where the husband

resided at the time of his death, but can be granted only by the probate court of that state.   11 Ruling Case Law, p. 443, § 544; *Smith v. Howard,* 86 Me. 203, 29 Atl. 1008, 41 Am. St. Rep. 537.

*By the Court.*—That portion of the order of the county court wherein it is determined that the deceased's residence at the time of his death was in California, and wherein it declined to proceed further on the petition for the probate of the alleged last will and testament of the deceased, is hereby affirmed.   The order of the court granting the widow's allowance is reversed, and the cause is remanded to the county court for further proceedings in accordance with this opinion.   Neither party shall be entitled to costs, but the appellant shall pay the clerk's fees.