MILWAUKEE COUNTY, Appellant, vs. STATE DEPARTMENT OF PUBLIC WELFARE, Respondent.

*October 13—November 8, 1955.*

For the appellant there were briefs by *William J. Mc-Cauley,* district attorney, *Oliver L. O'Boyle,* corporation counsel, and *George E. Rice,* assistant corporation counsel, and oral argument by *Mr. Rice.*

For the respondent there was a brief by the *Attorney General* and *Beatrice Lampert,* assistant attorney general, and *Albert Harriman,* law examiner, and oral argument by *Mrs. Lampert* and *Mr. Harriman.*

STEINLE, J. The question upon this appeal is whether the finding of the State Department of Public Welfare that Ignatz Krznarich, husband of the patient, Dorothy Krznar-

ich, had resided in Milwaukee county for a sufficient period so as to gain legal settlement there, was supported by substantial evidence in view of the entire record as submitted. Sec. 49.02 (4), Stats. 1941, provided that a person of full age who shall have resided in any town, village, or city in this state for one whole year, shall thereby gain a legal settlement therein.

It is undisputed that the legal settlement of the wife, Dorothy Krznarich, followed that of the husband, Ignatz Krznarich. The parties stipulated that the wife was duly committed to Winnebago State Hospital on March 1, 1943, and that on July 25, 1944, she was transferred to the Milwaukee County Hospital, where she remained thereafter and where on May 17, 1948, the date of the hearing, she was still a patient.

The husband testified that prior to 1941 he lived in the vicinity of Iron Mountain, Michigan, with his wife and son, in a little two-room shack which he owned. He finished a machinist's course at a vocational school in Michigan and went to Milwaukee in August or September, 1941, to look for a job, intending to send for his family when he became established. He obtained a job at Chain Belt Company, and got along all right until May 13, 1942. At that time on advice of a company nurse he took time off to clear up some skin trouble. He first went for treatment to a specialist in Milwaukee. When the condition did not improve, he decided to go back to Iron Mountain for treatment by his former doctor. His employer promised to restore his job when he returned, providing the skin infection was cured. He did not intend to remain permanently in Iron Mountain. He went back there because he had more faith in his former doctor. He left his toolbox in a room in Milwaukee. He remained under treatment in Iron Mountain for about four months until his condition cleared up. He did not work there, and he received no income other than group insurance

benefits from a policy taken out at the Chain Belt Company. He returned to Milwaukee in August, 1942, and applied for his job at the Chain Belt Company, but that concern would not take him back until his skin condition had cleared completely. He then obtained employment at Globe Steel Tube Company in Milwaukee, and sent for his family as soon as he could find a place for them to live. They joined him late in November, 1942. He continued to work at the Globe Steel Tube Company and was still employed there on May 17, 1948, at which time the department held its hearing in this matter.

Appellant contends that the evidence indicates that the husband had not resided in Milwaukee county for the required one whole-year period prior to the wife's commitment to the state hospital at Winnebago. It submits that he could not have gained a legal settlement during his absence from Milwaukee county from May, 1942, to September, 1942, during which time he was living with his family at the home owned by him near Iron Mountain, Michigan. It maintains further that the husband's physical presence or actual residence in Milwaukee county for a whole year was essential in order to entitle him to legal settlement, and that his intention to return to Milwaukee when leaving in May, 1942, was inconsequential. Appellant has cited cases from other jurisdictions to the effect that in order to gain legal settlement, a person must actually have resided within the locality for the required period, rather than having had a constructive, legal, or technical residence there. Appellant argues that the term "residence" has a distinct and unique interpretation in legal-settlement law, which differs from that of the law as to taxation, voting, marriage, and divorce.

In this state determination of residence for legal-settlement purposes is governed by the identical principles that determine residence for divorce and voting purposes. The term "residence" for legal-settlement purposes was considered in

*Waushara County v. Calumet County* (1941), 238 Wis. 230, 298 N. W. 613, and it was there indicated that such term is affected by the meaning of residence for voting and divorce purposes. In that case, when treating with the subject of residence for settlement purposes, the court quoted with approval from *Topsham v. Lewiston* (1882), 74 Me. 236, 238, 43 Am. Rep. 584, the following:

"When a residence has once been established by the concurrence of intention and personal presence, continuous personal presence thereafter is not essential to a continuous residence, . . ."

In *Miller v. Sovereign Camp W. O. W.* (1909), 140 Wis. 505, 508, 122 N. W. 1126, the court declared that, "Intention is almost invariably a controlling element in determining residence." In *Guardianship of Figi* (1923), 181 Wis. 136, 194 N. W. 41, it was held that the abandonment of a residence once established, and the acquiring of a new residence, is to a large extent a matter of intention.

Thus, while both personal presence and intention are required to establish residence, the continued personal presence thereafter is not essential to continuous residence. The intention to retain the residence once established by a person is an important element in determining whether he in fact retained such residence.

The attorney general in two opinions, 37 Op. Atty. Gen. (1948), 234, 235, and 40 Op. Atty. Gen. (1951), 168, indicated that residence for legal-settlement purposes implies an intent to live in a particular locality; that temporary absence is not sufficient to defeat the legal settlement; and that absence for a particular purpose, for instance, such as medical treatment, will not interrupt the year of residence necessary to gain legal settlement under the statutes.

It is significant that although the legislature has had opportunity to change the concept of "residence" for settle-

ment purposes as declared in *Waushara County v. Calumet County, supra,* and in the opinions of the attorney general as cited, it has not done so. Were it the pleasure of the legislature to require continuous presence as a prerequisite of residence for settlement purposes, it might readily so provide.

In *Waushara County v. Calumet County, supra,* and in sec. 6.51 (7), Stats. (pertaining to elections), it is declared that the place where a man's family resides shall generally be considered and held to be his residence. In *In re Burke* (1938), 229 Wis. 545, 282 N. W. 598, it was pointed out that a statute such as sec. 6.51 (7) is merely declaratory of the common law. In 17 Am. Jur., Domicil, p. 639, sec. 83, it is noted that while it is presumed that the domicil of a married man is the place where his family resides, nevertheless such presumption may be overcome by evidence showing the fact to be otherwise.

A careful review of the record indicates that the determination of the State Department of Public Welfare was based upon a proper construction of the term "residence for legal settlement purposes" and that the findings are supported by substantial evidence. The judgment of the trial court in sustaining the decision and order of the State Department of Public Welfare must be affirmed.

*By the Court.*—Judgment affirmed.

MARTIN, J., took no part.