MARATHON COUNTY, Appellant, vs. MILWAUKEE COUNTY and another, Respondents.

*September 11—November 7, 1956.*

For the appellant there were briefs by *Ronald D. Keberle,* district attorney of Marathon county, and *Robert C. Altman,* assistant district attorney, and oral argument by *Mr. Altman.*

For the respondent Milwaukee county there was a brief by *William J. McCauley,* district attorney, and *Oliver L. O'Boyle,* corporation counsel, and *George E. Rice,* assistant corporation counsel, and oral argument by *Mr. Rice.*

For the state of Wisconsin and the State Department of Public Welfare there was a brief by the *Attorney General* and *Beatrice Lampert,* assistant attorney general, and *Albert Harriman,* attorney, and oral argument by *Mrs. Lampert* and *Mr. Harriman.*

WINGERT, J.   The ultimate question presented by the appeal is whether Davidson had a legal settlement in Marathon county on April 10, 1945, when his children were committed to the state public school.  The controlling statutory provisions are the following:

Sec. 49.02 (4), Stats. 1941:

"Every person of full age who shall have resided in any town, village, or city in this state one whole year shall thereby gain a settlement therein; but no residence of a person in any town, village, or city while supported therein as a pauper . . . shall operate to give such person a settlement therein. . . ."

Sec. 49.02 (7), Stats. 1941:

"Every settlement when once legally acquired shall continue until it be lost or defeated by acquiring a new one in this state or by voluntary and uninterrupted absence from the town, village, or city in which such legal settlement shall have been gained for one whole year or upward; and upon acquiring a new settlement or upon the happening of such voluntary and uninterrupted absence all former settlements shall be defeated and lost."

Under sec. 49.02 (4), Stats., the acquisition of a legal settlement depends on residence.  While that term is not defined in the statute, it is held to be the equivalent of domicile

as generally used. *Carlton v. State Department of Public Welfare,* 271 Wis. 465, 468, 74 N. W. (2d) 340.

It is conceded by appellant that Davidson established a residence in Marathon county on October 2, 1941, when he moved there with his family, and for present purposes we accept it as a verity. A domiciliary residence once established is not lost until a new one is acquired. *Will of Eaton,* 186 Wis. 124, 133, 202 N. W. 309; Restatement, Conflict of Laws, p. 47, sec. 23. Hence, if Davidson did not acquire a new residence elsewhere within one year after he established his Wausau residence in October, 1941, excluding the time when he was supported there as a pauper, then according to the plain terms of sec. 49.02 (4), Stats., he obtained a legal settlement in Wausau; and the next question would be whether he had abandoned it prior to April 10, 1945, by voluntary and uninterrupted absence from that city within the meaning of sec. 49.02 (7).

In February, 1942, after four months in Wausau, Davidson moved with his family to Milwaukee, and lived there until he went into the army. It was stated in the oral argument that neither he nor his family ever returned to Wausau to live. If Davidson had not been on probation for a criminal offense at the time he moved with his family to Milwaukee, the inference would be clear that he acquired a new residence in Milwaukee and thus gave up his Wausau residence. Clearly he gave up his home in Wausau and thenceforth made his home in Milwaukee.

When a person has only one home, his domicile (and hence his "residence" within sec. 49.02, Stats.) is the place where his home is, "home" being his dwelling place. To acquire a domicile of choice, a person must establish a dwelling place with the intention of making it his home; and having a home in one place, he can acquire a domicile of choice in another by giving up the first home and acquiring a new home in the second place. Restatement, Conflict of Laws, pp. 24–29, 32,

secs. 12, 13, 15. The abandonment of a residence once established and the acquisition of a new one is largely a matter of intention. *Milwaukee County v. State Department of Public Welfare,* 271 Wis. 219, 223, 72 N. W. (2d) 727.

In the absence of anything in the record to the contrary, Davidson's removal to Milwaukee with his family, his and their presence there until he went into the army, and the fact that none of them returned to Wausau, make the inference inescapable that he intended to abandon his Wausau home and make his home in Milwaukee. In the light of the principles above stated, we conclude that he established a residence in Milwaukee before his Wausau residence ripened into a legal settlement.

It is argued by respondents that because Davidson was on probation following conviction of a crime, he could not have the intention or volition required for the establishment of a residence in Milwaukee, and that therefore his Wausau residence continued and ultimately matured into legal settlement. The Department of Public Welfare and the circuit court so held. We cannot agree.

There is no necessary inconsistency between probation, of itself, and the necessary volition to establish a new residence. To be sure, a man on probation is subject to some restrictions on what he may do without permission; but he is by no means under the total restraints of imprisonment. Indeed, it is the essence of probation that he shall be free to go about his business as a self-supporting citizen, except in the particulars in which he is restrained by the terms of the probation and the authorized commands of the probation authorities.

We are not referred to any general restraint imposed on probationers in this state which would necessarily prevent acquisition of a new residence. The governing statute, sec. 57.02 (2), Stats. 1941, merely provided that a defendant placed on probation to the State Department of Public Welfare—

". . . shall be subject to the control and management of the said board under the regulations applying to persons paroled from state institutions after a period of imprisonment therein; . . ."

Pursuant to its rule-making authority, the Department of Public Welfare promulgated a regulation which was in effect when Davidson was placed on probation, and which contained the following significant provisions:

"In consideration of probation or parole being granted, the applicant, hereinafter referred to as 'I,' must agree to the following: . . .
"(3) I shall at all times keep my supervising officer informed of my whereabouts and activities, and *will consult him regarding any changes of* employment or *residence.*" Wisconsin Administrative Rules and Orders (1942 ed.), p. 351, Rule 1 Corr. (Emphasis supplied.)

Thus, far from denying the probationer all possibility of changing his residence, the applicable regulation recognized his ability to do so, and merely required him to consult the department's representative. While the stipulation of facts in the present case states that under the terms of his probation, Davidson was "restricted as to his residence, employment, etc., according to standard probation terms," the record does not disclose what such restrictions were, and we may infer that they were consistent with the departmental regulation just cited.

Whatever restrictions may have been originally imposed with respect to residence, it further appears that Davidson *"received specific permission* from the State Department of Public Welfare, Division of Probation and Parole, *to move to Milwaukee* where he was to be placed under supervision shortly after his arrival in Milwaukee." The department made a specific finding that he "was *allowed* to go to Milwaukee, Wisconsin, to work under supervision." Hence any restriction in the original order of probation which might

have prevented Davidson from establishing a new residence in Milwaukee was eliminated *pro tanto* by the permission granted him to move to that city. There is nothing in the record to suggest that he was ordered to Milwaukee against his will, and the inference from the words "permission" and "allowed" is that he went there voluntarily. Permission made him a free agent in that respect, and his voluntary and permitted act should be given normal legal significance.

Davidson's ability to acquire a new residence was not destroyed by the fact that he might be ordered back to Wausau or to prison should circumstances warrant. Establishment of a residence, while involving intent to make a home for an indefinite period, does not require either intent or ability to remain in the new residence for the rest of one's life or indeed for any particular length of time. Probably everyone, in establishing a residence, contemplates that in the future it may be necessary or desirable to abandon it and move elsewhere. Thus a corporate employee assigned to a branch office of a company having such offices in many cities, may establish a residence in the particular city although well knowing that it is the policy of the company to shift its people from place to place, and fully expecting that in due course he will be transferred to a new city and have to give up his residence and establish a new one. So in the present case, Davidson's ability to establish a Milwaukee residence was not impaired by his presumed awareness that he might have to return to Wausau.

It follows from what has been said that Davidson did not "reside" in Wausau long enough to obtain a legal settlement there under sec. 49.02 (4), Stats. 1941. Were it otherwise, and had he acquired such a settlement by one year's residence while not supported as a pauper, it would appear probable that he then lost it prior to April 10, 1945, by "voluntary and uninterrupted absence" from Wausau for one whole year, within the terms of sec. 49.02 (7), quoted more fully at the

beginning of this opinion. Note that while sec. 49.02 (4) required *residence* for the acquisition of a settlement, sec. 49.02 (7) required only "voluntary and uninterrupted *absence*" to lose or defeat the settlement. On any view as to the effect of probation on Davidson's ability to acquire a new residence, the record leaves little doubt that his absence from Wausau was voluntary. The record does not specifically show that such absence was entirely uninterrupted, however, and hence we do not place our decision on that ground.

The order of the State Department of Public Welfare having been based on an error of law in relation to undisputed facts, it must be reversed.

*By the Court.*—Judgment reversed, with directions to enter judgment reversing the order of the State Department of Public Welfare.

STEINLE, J. (*dissenting*). I am not able to agree with the conclusion reached by the majority that a person who is placed on probation after having been convicted of crime, may, during the probationary term, effectively change his legal residence so as to gain legal settlement at a new location.

A probationer, like a prisoner in a penal or corrective institution, is held in the legal custody of the authorities. In the case of the probationer such custody is constructive. With the prisoner, the custody is actual. In the matter at bar, Joseph Davidson in his application for probation was obliged to agree that: "I shall remain in the legal custody of the State Department of Public Welfare, Division of Corrections, until informed in writing that I am discharged from further supervision." Wisconsin Administrative Rules and Orders (1942 ed.), p. 351, Rule 1 Corr.

The statutes provide that in case the conditions of probation are violated, the current probation and all subsequent consecutive probations shall be revoked. Sec. 57.01 (1), Stats. Except as provided in sec. 57.025 (probation in Mil-

waukee county) every probationer in the custody of the department (Department of Public Welfare) shall be subject to the control of the department under regulations applicable to paroled persons. Sec. 57.02.

Since a probationer is in the legal custody of the state, he is necessarily under disability and is restrained in the exercise of choice. A probationer is entirely subject to the direction of the department at all times during the term. The granting of permission to a probationer upon his request to work and live in a place other than that where he had resided and pursued an occupation before probation, in legal effect is not to be distinguished from the granting of leave to one who is in a penal or corrective institution to change quarters or work there. Either of such arrangements may, of course, be permitted by the grace of the custodian, but it is subject to modification or termination at the pleasure of the custodian at any time. While it may be said that such change involves a certain amount of volition on the part of the probationer or prisoner, nevertheless the change, if permitted, is the result of direction on the part of the custodial authority.

Probation is a substitute for imprisonment. It is a conditional suspension of sentence. It is applied on the theory that if allowed to retain his liberty, and be at large among the people under regulations and supervision, the convicted person will not engage in a criminal course of conduct. See *People v. Robinson* (1931), 253 Mich. 507, 235 N. W. 236. Probation merely grants grace to a guilty person with the evident purpose of helping him to reform, and he is not a free man but is subject to restraint and conditions imposed by the court during his temporary freedom. The probationary period may be compared to a sentence term, as each is in reality an expiation of the crime. *State ex rel. Gordon v. Zangerle* (1940), 136 Ohio St. 371, 26 N. E. (2d) 190. The probationer is not a free man, but is subject to surveillance, and to such restrictions as the court may impose. *Cooper v. United States* (5th Cir. 1937), 91 Fed. (2d) 195, 199.

Change of residence in so far as it affects legal settlement must be voluntary. In 17 Am. Jur., Domicil, p. 606, sec. 27, it is said:

"To acquire a domicil of choice there must be a voluntary change of residence by a person free from restraint and capable of acting for himself. As a general rule of law, persons under legal disability or restraint or persons in want of freedom are incapable of losing or gaining a domicil by acts performed by them under the control of others."

In *Millett v. Pearson* (1919), 143 Minn. 187, 189, 173 N. W. 411, it was said:

"As a general rule of law persons under legal disability or restraint or persons in want of freedom are incapable of losing or gaining a residence by acts performed by them under the control of others. There must be an exercise of volition by persons free from restraint and capable of acting for themselves in order to acquire or lose a residence. A person imprisoned under operation of law does not thereby change his residence."

It thus appears that since any exercise of choice by a probationer to change his place of living during the term can result only as a matter of grace on the part of the custodial authority, and that since such change, if made, is actually by direction of the authority, it cannot be said that the change is voluntary. If a probationer is not able to acquire or lose a domicile by any change on his part while in legal custody of the department, his residence remains as it was when probation commenced.

The appellant, Marathon county, maintains that if Joseph Davidson's residence was not voluntary in Milwaukee county, which was the place to which he moved with his family during the probationary term, with permission of the department, then his technical residence in Marathon county was not voluntary either, for the reason that he could not exercise choice in changing it, and, therefore, he could not gain legal

settlement in Marathon county during the term. It is true that Davidson left Marathon county immediately after he was placed on probation, and it is conceivable that he did not intend to return to Marathon county. The fact is that he did not return. However, under the authorities referred to herein, it appears that he did not have the capacity to change his residence from Marathon county while he was on probation despite any intention that he may have had to do so, and despite his absence from that county during the term.

Legal settlement under sec. 49.02 (4), Stats., depends, among other conditions, upon continued residence for at least a year without participation in public aid. Davidson had not acquired settlement in Marathon county during his residence there before he was placed on probation because of the aid which he had received. However, during the probationary period his residence there, which he could not change, did continue for more than a year without his receipt of aid. He was not in a position to repudiate legal settlement in Marathon county, nor was there any way whereby Marathon county could stop legal settlement from ripening. Legal settlement follows as of course when the qualifications therefor exist.

Counsel for Marathon county have proposed the hiatus theory—a suspended period—a break in the connection—with reference to the ability of a probationer to acquire or change legal settlement during the probationary term. They suggest that the situation is analogous to that of a citizen who when moving from one place to another may be deprived of voting privileges. However, in such case the citizen may not be entitled to vote in the place of his new residence because he has not resided there for a sufficient period of time. He may not, of course, vote at the place of his old residence because he had given that up. For instance in sec. 6.51 (5), Stats., it is declared: "If a person removed to another state with an intention to make it his permanent residence, he shall be considered and held to have lost his residence in this state."

There is no similarity of such situation in the matter at bar. Here the residence is continued at the place where it existed when probation was imposed. The legislature has not provided that qualifications for legal settlement are to be suspended during the period in which a person is on probation. I am obliged to conclude, as did the trial court, that while probation destroys the ability to initiate a change of legal settlement, it does not prevent the consummation of change commenced before probation.

The judgment of the lower court ought to be affirmed.

I am authorized to state that Mr. Chief Justice FAIRCHILD joins in this dissent.