ROBERT C. ZIMMERMAN, Secretary of State
You have requested my advice concerning the current voter registration guidelines which should be followed in the registration of students, who are living away from their parents' home while attending school, particularly in light of the adoption of the Twenty-Sixth Amendment to the United States Constitution, which reduces the minimum voting age for all elections in our state from 21 to 18 years of age.
You point out that, prior to the extension of franchise to persons 18 to 20 years of age, your office was advised by my predecessor by informal opinion, dated October 25, 1968, that students of voting age may register and vote at their place of residence while attending school, regardless of whether they receive come financial support from their parents or return to their parents' home during the vacation periods. In my opinion, such advice remains applicable today. However, I would disagree with my predecessor regarding some of the advice given in that opinion as to what procedures the statutes provide for registration. Since it is obvious that a good deal of confusion still exists among election officials in reference to student voting, and, since recent legislative enactments and judicial interpretations have introduced additional aspects to the question, I provide the following discussion.
A basic voter qualification requirement is, of course, that the voter registrant be a bona fide resident of the state and the election district where he proposes to vote. Article III, sec. 1, Wis. Const., provides, in part, that a qualified elector is one who "shall *Page 246 
have resided" in the state and the election district where he offers to vote. Section 6.02, Stats., which further implements this provision of our Constitution, provides, in part, as follows:
"(1) Every United States citizen age 21 or older who has resided in this state for 6 months preceding any election and who has resided in an election district or precinct for 10 days before any election where he offers to vote is an eligible elector."
By virtue of the Twenty-Sixth Amendment, "21" in sec. 6.02, Stats., must be read as "18." It is also appropriate for me to point out here that by virtue of the United States Supreme Court decision in Dunn v. Blumstein (1972), 40 Law Week 4269, 405 U.S. 330,92 S.Ct. 995, 31 L.ed. 2d 274, decided March 21, 1972, I must also conclude that the six-month state durational residency requirement set forth in sec. 6.02 would not withstand constitutional attack under the equal protection clause of theFourteenth Amendment to the United States Constitution. Therefore, this requirement may no longer be considered as effective under the Wisconsin Constitution and statutes and should be ignored when reading any of the Wisconsin voting laws containing such provision. In my opinion, however, Wisconsin's ten-day durational residency requirement set forth in Art. III, sec. 1, Wis. Const., and sec. 6.02, Stats., remains valid in reference to all elections except presidential and vice-presidential election.* *Page 247 
The deletion of the six-month durational residency requirement does not affect the requirement that only bona fide residents may vote in Wisconsin. As pointed out by the court in the Dunn case,supra, at 92 S.Ct., pp. 1003-1004:
". . . We emphasize again the difference between bona fide residence requirements and durational residence requirements. We have in the past noted approvingly that the States have the power to require that voters be bona fide residents of the relevant political subdivision. [Cases cited.] An appropriately defined and uniformly applied requirement of bona fide residence may be necessary to preserve the basic conception of a political community, and therefore could withstand close constitutional scrutiny. . . ."
The following provisions of sec. 6.10, Stats., which statute sets forth guides and standards governing residence as a qualification for voting, appear to relate to your question:
"(1) The residence of a person is the place where his habitation is fixed, without any present intent to move, and to which, when absent, he intends to return.
". . . *Page 248 
"(4). . . An unmarried person in a transient vocation, a teacher or a student who boards at different places for part of the week, month or year, has his residence, if one of the places is with his parents, at the place of his parents unless throughregistration or similar act he elects to establish a residenceelsewhere. If he has no parents and if he has not registered elsewhere, his residence shall be at the place which he considered his residence in preference to any other for at least 10 days before an election. If this place is within the municipality, he is entitled to all the privileges and subject to all the duties of other citizens having their residence there, including voting.
". . .
"(11) Neither an intent to acquire a new residence without removal, nor a removal without intent, shall affect residence." (Emphasis added.)
 In Wisconsin, the term "residence," as used in reference to voter eligibility, means domicile.
Our court has considered the meaning of the term "residence" on a number of occasions, and in various context. One of the earliest decisions, Hall v. Hall (1870), 25 Wis. 600,39 N.W. 658, considered the term "shall have resided in this state" as used in the divorce statute. In concluding that the words "residence" and "domicile" were interchangeable terms, the court placed significant reliance on earlier case law stating, at page 608, of the opinion:
". . .In Cranford v. Wilson, 4 Barb. S.C. 504, is very full and instructive discussion of the question of residence and domicil, and of what facts go to constitute them. That was an action for slander, which, in its consideration, involved the question whether a party had the right to vote at a school district meeting. Mr. Justice Paige, in his opinion cites a great number of authorities, giving definitions of the terms `residence,' `inhabitance' and `domicil,' and deduces the proposition that the terms `legal residence,' or `inhabitancy,' and `domicil,' mean the same thing. `By legal residence,' he says, `I mean the place of a man's fixed habitation, where his political rights, such as the right of the elective franchise, are to be exercised and where he is liable to *Page 249 
taxation. A person leaving such place of fixed habitation or abode temporarily, as for a particular purpose, either for business, pleasure or health, with the intent of returning to the same as soon as such purpose is accomplished, does not lose his residence or habitancy in such place of abode.' P. 522."
"Residence" has been held to mean "domicile," for the purposes of taxation, Kellogg v. The Supervisors of Winnebago County
(1877), 42 Wis. 97, 107, 46 N.W. 254, and residence for tax situs of income and for voting purposes is generally the same. 32 OAG 92 (1943). A durational residency requirement used as a qualification for holding city office has been held to refer to domicile, Kempster v. The City of Milwaukee (1897), 97 Wis. 343,347-348, 72 N.W. 743, and "residence" as used in poor relief statutes has been held to be the equivalent of the term "domicile" as generally used. Marathon County v. Milwaukee County
(1956), 273 Wis. 541, 79 N.W.2d 233; Carlton v. State Departmentof Public Welfare (1956), 271 Wis. 465, 468, 74 N.W.2d 340.
Over 70 years ago, in the earliest published opinions of this office, the Attorney General considered the provisions of Art.III, sec. 1, Wis. Const., as well as earlier versions of the above-quoted provisions of secs. 6.02 (1) and 6.10 (1), Stats., in determining what constitutes "residence" for voting purposes. 1902 OAG 78. At page 80, of said opinion, the following is stated:
"Basing my conclusion upon these provisions of our State Constitution, our State Statutes and the decision of our Supreme Court [Kempster case, supra], I hold that `residence' is used in the board sense of domicile.
"The particular facts surrounding each case must be investigated to find out what the intention of the party is,irrespective of his employment." (Emphasis added.)
In light of the foregoing, there appears to be little doubt in Wisconsin that the term "residence," as used in reference to our voting laws, means domicile. All potential electors should have a basic understanding of the character and requisites of voting residence and domicile, whether or not they are minors and whether or not they are students, since it should be evident from *Page 250 
the foregoing that a determination to establish such residence and domicile may involve considerations other than those immediately relating to the excise of the franchise.
 A person's domicile is determined by a combination of two elements, intent and physical presence.
As a practical matter, it must be accepted at the outset that there is no absolute criterion or guideline which will, at once, determine the question of residence in every case. Each case depends on its particular facts. 25 Am. Jur. 2d, Elections, sec. 66, p. 759. However, considering the great influx of new voters, who will now be registering and voting as a result of theTwenty-Sixth Amendment, reference to prior statements of our Supreme Court on the nature of domicile appears appropriate.
The definition of the word "residence" by our court in theKempster case, supra, is still probably one of our better general statements of the law of domicile. At page 347, the court says:
". . . In one sense a person may have more than one place of residence, but he can only have one which has the element of permanency essential in a legal sense to his domicile. He can have only one domicile at one time. To constitute that there must be an actual location, with the intent to make such place his home indefinitely. To establish the domicile does not require any considerable length of time. Residence at a place for any length of time, however short, with the concurring intention of permanently residing at such place, renders such place, in a legal sense, the person's domicile, and, being once fixed, it will continue till abandoned, without reference to any mere absence for a temporary purpose, with the fixed intention of returning when such purpose shall be accomplished [Citations.]"
Two well-recognized and often repeated principles of the law of domicile, recognized in Eau Claire County v. Milwaukee County
(1964), 24 Wis.2d 292, 296, 128 N.W.2d 666, state:
". . . though both personal presence and intention are required to establish a domicile, a temporary absence with intent to return does not affect a change of domicile. [Citations.] *Page 251 
". . . a domicile once established continues until it is superseded by a new domicile. [Citations] . . ."
See also sec. 6.10 (1) and (11), Stats., supra.
While it is true that permanency is an element of domicile, the term must be understood in the context of today's highly mobile society. As indicated in Marathon County, supra, at page 548:
". . . Establishment of a residence, while involving intent to make a home for an indefinite period, does not require either intent or ability to remain in the new residence for the rest of one's life or indeed for any particular length of time. Probably everyone, in establishing a residence, contemplates that in the future it may be necessary or desirable to abandon it and move elsewhere. . . ."
See also, State ex rel. Ferebee v. Dillett (1942), 240 Wis. 465,3 N.W.2d 699; Frame and others v. Thormann (1899), 102 Wis. 653,79 N.W. 39.
Finally, regardless of the reason or purpose which motivates a person to change his domicile, the purported change may not be fictitious, and, whether he changes it or not, depends on whether there is an actual change of residence with a bona fide intention of acquiring such new domicile. Baker v. Department of Taxation
(1945), 246 Wis. 611, 616-617, 18 N.W.2d 331; Will of Heymann
(1926), 190 Wis. 97, 99-100, 104, 208 N.W. 913. Although there may be a specific reason why a person desires to change his legal residence, it is essential that he intend in good faith to make the new place his home for all purposes. 25 Am. Jur. 2d,Elections, sec. 67, page 760.
 Citizens 18 years of age and older may establish a domicile for voting purposes.
Ordinarily, the residence of a minor follows that of his parents, unless he sooner becomes emancipated. Carlton v. StateDepartment of Public Welfare, supra; Kidd v. Joint SchoolDistrict (1927), 194 Wis. 353, 356, 216 N.W. 499; 4 OAG 929 (1915); 54 OAG 27 (1965); 54 OAG 68, 69. Therefore, since the minimum age for voting in our state has been the age of majority, the domicile of a minor, for the purpose of establishing voting *Page 252 
situs, was that of the minor's parents until he became of age, at which time he was free to retain or abandon such domicile and residence, and the voting privileges based thereon. 28 OAG 208 (1939).
There is no hard-and-fast rule to determine emancipation, and much depends upon the intent and the circumstances of the emancipation. Niesen v. Niesen (1968), 38 Wis.2d 599, 603,157 N.W.2d 660. However, "Emancipation may be partial or total and limited to certain purposes." Niesen case, supra, page 602. See also Wadoz v. United Nat. Indemnity Co. (1957), 274 Wis. 383,389, 80 N.W.2d 262.
With the advent of the Twenty-Sixth Amendment, it appears evident that persons 18 years of age had become at least partially emancipated, i.e., at least for all purposes reasonably related to the excise of the franchise. Subsequently, the age of majority in Wisconsin was lowered from 21 years of age to 18 years, by ch. 213, Laws of 1971, effective March 23, 1972. This means that citizens 18 years of age and older no longer are minors. They are free to establish a domicile for voting purposes in the same manner and to the same extent as any other adult.
 Student status itself is not a proper consideration in determining domicile for the purpose of establishing voter eligibility.
As pointed out by the 1902 opinion of our office and inJolicoeur v. Mihaly (1971), 96 Cal. Rptr. 697, 488 P.2d 1, 8, "Student status is therefore a neutral fact in determining residence for voting purposes." The basic question in determining voter eligibility in Wisconsin is the residence or domicile of the registrant, and not his occupational or student status. It should also be noted that when sec. 6.16 (2), 1963 Stats., which set forth the form of the registration affidavit, was repealed and recreated by ch. 666, Laws of 1965, the place to show the occupation of the registrant was deleted.
The present expansion of the franchise has apparently resulted in fear on the part of some persons that students will not exercise their franchise in a responsible manner or that large student populations in small college communities will overwhelm the balance of the voters by force of number. Similar expressions of *Page 253 
concern have accompanied most expansions of the electorate in the past, but they normally have proved to be unjustified and exaggerated. In any event, it is clear that otherwise qualified electors may not be denied their right to vote, students or not, simply because of the manner in which they might vote. As recently stated in Wilkins v. Bentley (1971), 385 Mich. 670,189 N.W.2d 423, at page 433:
"We agree that it is no longer constitutionally permissible to exclude students from the franchise because of the fear of the way they may vote.
"`"Fencing out" from the franchise a sector of the population because of the way they may vote is constitutionally impermissible. "[T]he exercise of rights so vital to the maintenance of democratic institutions," (Schneider v. State of New Jersey, 308 U.S. 147, 161, 60 S.Ct. 146, 84 L.Ed. 155) cannot constitutionally be obliterated because of a fear of the political views of a particular group of bona fide residents.' Carrington v. Rash, [1965], supra, 380 U.S. [89] at p. 94, 85 S.Ct. [775] at p. 779. [13 L.ed. 2d 675]."
I am aware that early decisions of our court considering the voting residence of students placed heavy reliance on parental support and periodic return to the parents' home, even though the student had become of age. Thus, in one of four such cases considered by our court in 1916, Seibold v. Wahl (1916), 164 Wis. 82,86, 159 N.W. 546, our court said:
"Much weight is to be laid upon the fact as to whether or not such student is what is commonly called `emancipated' from his family so far as looking to them for a home or place to which it return or for means of support. [Citations]"
On the finding of these facts, the court concluded that the actions of the student were inconsistent with his declared intention to establish a bona fide residence where he was attending school. Over 50 years ago, such a conclusion undoubtedly reflected the social and human relationships of the time. As time has passed, however, the significance of such relationships has changed and they have come to play an increasingly less important role in determining residence, at least for voting purposes. For instance, sec. 6.10 (4), Stats., quoted *Page 254 
above, emphasizes the fact that a student or other person engaged in a transient vocation may establish a residence or domicile of choice at some place other than the place of his parents. Under that statute, even though he may spend part of his time at their home, registering to vote elsewhere disposes of the significance which might otherwise have been attached to that particular fact.
Residence or domicile does not depend on the character of a person's dwelling. He may establish his home at a boarding house, a hotel, an apartment, a mobile home or in a more conventional house. In the case of a student, financial or other considerations may cause him to choose a fraternity or sorority house or a dormitory over other alternatives. This fact, by itself, is not sufficient to justify a conclusion that the student does not intend to be a bona fide permanent resident of his college community.
On the other hand, this does not mean that students establish their residence for voting purposes in any different manner or pursuant to different criteria than the balance of the voting populace. Nor does student status create any special class of citizens whose bona fides cannot be challenged. The act of registration does not make a registrant, student or not, a bona fide resident of a community. The act of registration is only the registrant's affirmation that he has established a bona fide residence in the community.
 Municipal clerks have responsibility for the integrity of registration and may make appropriate inquire, but may not discriminate against students by directing special questions to them concerning residents which are not asked of other registrants.
Questions continue to arise regarding the extent to which a voter registrant may be questioned by a municipal clerk concerning his past residences and his intent in reference to his present residence. The above-mentioned informal opinion of October 25, 1968, advised that the initial voter registration process is not to be considered as a substitute for the various other procedures available for questioning voter residency under the election laws. See secs. 6.48 (challenging registration),6.50 (revision of registry), 6.92 (challenging the elector in person) or 6.93 (challenging the absent elector), Stats. Generally speaking, it *Page 255 
is usually unnecessary to engage in any lengthy questioning of the registrant's residence history, and the facts concerning residence which are supplied the clerk at the time of registration normally should not be questioned, unless the clerk has information or knowledge that those facts are false.
This is not to say that the registering clerk may not and should not make inquiry concerning residence beyond those specific facts which must appear on the face of the registration card. Every municipal clerk has charge and supervision of registration in his municipality, and he may take such action as may be necessary to properly conduct such registration. Secs.7.15 (1) and 6.26, Stats. For instance, the clerk has a responsibility to ascertain whether a registrant has been previously registered in Wisconsin and, if so, where, so as to be able to cancel his voting privileges at his prior residence, as required under sec. 6.40, Stats. Likewise, the clerk should satisfy himself that the voter registrant appreciates the substance of the oath or affirmation regarding his residence, which he is required to take, as part of the registration process. However, municipal clerks may not discriminate against students or any other group of citizens by directing special questions to them which are not asked of all other registrants. As stated by the court in the Jolicoeur case, supra, at 488 P.2d 12:
". . . We do not imply that registrars may not question a citizen of any age as to his true domicile. . . . We hold only that registrars may not specially question the validity of an affiant's claim of domicile on account of his age or occupational status."
For similar holdings, see Anderson v. Brown (1971),332 F. Supp. 1195 (D.C.S.D. Ohio, W.D.); Michael H. Kennedy, et al. v.Thomas Meskill, et al. (D.C., Conn.), decided September 13, 1971;Stephen Brooks Bright, et al. v. Charles E. Baesler, Jr. (1971),336 F. Supp. 527 (D.C.E.D., Ky). In the latter case, the court suggested the following questions might be appropriate for the purpose of establishing domicile at the time of registration:
"1) What is your present address?
"2) Do you regard any other place as your home?
"3) Do you intend to make Fayette County your place of residence for an indefinite or permanent period of time? *Page 256 
"4) Do you consider yourself to have permanently abandoned your former home or residence?
"5) Do you have no present intention to reside elsewhere or return to your former home or place of residence?"
I note that these questions reflect the same general standards governing residence as a qualification to vote as are set forth in sec. 6.10, Stats.
In conclusion, it is my opinion that initially by virtue of theTwenty-Sixth Amendment to the United States Constitution, and now also by virtue of ch. 213, Laws of 1971, citizens 18 years of age and older must be treated as adults for all purposes relating to voting, including establishing a residence or domicile. Student status is not a proper consideration in determining domicile for the purpose of establishing voter eligibility; however, students establish their residence for voting purposes in the same manner as the balance of the voting populace, and municipal clerks may make inquiry of voter registrants concerning their intent to establish a bona fide residence, as long as any such questions reasonably relate to domicile and each registrant is asked the same questions.
RWW:JCM
* The lengthy opinion in Dunn v. Blumstein, supra, appears as much directed to durational residence laws in general as to the specific voting laws under consideration and repeatedly emphasizes one dominant theme, most succinctly stated at92 S.Ct., p. 1033, as follows:
"In sum, durational residence laws must be measured by a strict equal protection test: they are unconstitutional unless the State can demonstrate that such laws are `necessary to promote acompelling government interest.' Shapiro v. Thompson, supra,394 U.S., at 634, 89 S.Ct. at 1331 (emphasis added); Kramer v. UnionFree School District, No. 15, supra, 395 U.S., at 627,89 S.Ct., at 1889.***"
The court has thus resolved what rule of law is to guide the courts on a question which had previously almost evenly divided the lower federal courts. Applying this standard to the case at hand, the court concluded that the state of Tennessee, which required that persons must have been residents in the state for a year and in the county for three months before they could vote, had not offered an adequate justification for its durational residence laws. (See also Affeldt v. Whitcomb (1970),319 F. Supp. 69 (D.C.N.D. Ind.), which struck down Indiana's six-month durational residence requirement for voting. This decision was affirmed by the United States Supreme Court on April 3, 1972,31 L.ed. 2d 576.)
Prior to this decision, by sec. 202 of the 1970 Federal Voting Rights Act, Congress had already abolished all durational residence requirements in reference to presidential and vice-presidential elections. 42 U.S.C. sec. 1973aa-1. In light of the foregoing, the Wisconsin six-month durational residency requirement is most assuredly invalid as to all other federal, state and local elections. In my opinion, however, the same is not true of our ten-day durational residency requirement.
Though characterized as a "stringent standard," the court recognized that however mathematically precise the equal protection test may sound, it deals in matters of degree. Thus, at 92 S.Ct., p. 1006, the court states:
". . .It is sufficient to note here than 30 days appears to be an ample period of time for the State to complete whatever administrative tasks are necessary to prevent fraud — and a year, or three months, too much. . . ."
The court draws support for the appropriateness of a 30-day period from the fact that both the Federal Voting Rights Act of 1970 and the laws of the state of Tennessee reflect 30 days as an appropriate cutoff point after which unregistered electors may be denied the franchise, absolutely. Obviously, such provisions of the law impose durational residency requirements more stringent than the ten-day durational residency requirement set forth in Art. III, sec. 1, Wis. Const., and sec 6.02, Stats.
Considering the Dunn case, supra, as a whole, it is my opinion that it does not affect the continued validity of that provision of Wisconsin election law which requires that a bona fide resident of Wisconsin must reside in the election district or precinct for ten days before any election where he offers to vote.