## The State ex rel. Wood County vs. Dodge County.

*October 16 — October 31, 1882.*

| | |
|---|---|
| 56 | 79 |
| 76 | 118[1] |
| 56 | 79 |
| 102 | 667 |
| 103 | 466 |
| 56 | 79 |
| 110 | [2]240 |
| 110 | [2]628 |
| 56 | 79 |
| 115 | [2] 66 |

State Hospitals for Insane. *(1) Power of board of trustees to correct mistakes, when inmate charged to wrong county. (3) "Proper residence" defined.*
Certiorari to board or officers. *(2) What reviewable.*

1. Without passing upon the constitutionality of ch. 229, Laws of 1881, and without attempting precisely to define the powers vested by it in the board of trustees of state hospitals for the insane, it is *held,* that the legislature might properly confer upon said board authority to correct mistakes when satisfied that an insane person is charged to the wrong county, and to make an order — such as is contemplated by the law — stating the county to which such person is chargeable, which order should be deemed *prima facie* proof of the liability of that county.
2. On a common law writ of *certiorari* which brings up for review the proceedings of an officer or board which acts in a summary manner out of the course of the common law in the exercise of *quasi*-judicial powers, this court will not only look into the proceedings for the purpose of ascertaining whether such officer or board acted

according to law and within its jurisdiction, but will also correct errors and irregularities in such proceedings. It will also examine and review an order based upon facts, where there is no contention as to what the real proof in the case was.

3. The "proper residence" of a person, within the meaning of a statute providing that the support of an insane person shall be charged to the proper county, when his proper residence shall have been ascertained, is the place where he has voluntarily fixed his abode, not for a mere special or temporary purpose, but with the present intention of making it his home.

CERTIORARI to the State Board of Supervision of Wisconsin Charitable, Reformatory and Penal Institutions.

On the 27th of April, 1882, the county of *Dodge* applied to the said board for relief from the charge of supporting one George Carr, an insane person confined in the northern hospital for the insane, upon the ground that said Carr was not, at the time of becoming insane or of being so confined, a resident of *Dodge* county, but was a resident of *Wood* county.[1]  The county of *Wood* filed with the board its ob-

---

[1] Ch. 229, Laws of 1881, provides as follows: "Sec. 1. Whenever any inmate in either state hospital for the insane, shall be improperly charged to the state, or to any county, the attorney general, on behalf of the state, and the district attorney of such county, on its behalf, may make written application to the board of trustees of state hospitals for the insane, for relief from charge. If known to the applicant, such application shall state the name of the county to which such inmate is chargeable, or if it be claimed that the state is chargeable therewith, it shall be so stated. The said board shall give to the attorney general, or to the district attorney of the county so named, as may be proper, reasonable notice of such application, and of the time and place when it will be heard. The state or such county may appear, and be heard in opposition to such application. Such application may be supported by affidavits and other proper evidence. If upon the hearing upon such application, the said board shall be satisfied that the relief asked for should be granted, it shall, by its order in writing, grant the same, and therein name the county chargeable with such inmate, if it shall find any county so chargeable. If it shall find the state chargeable it shall so set forth. From and after the making of such order such inmate

The State ex rel. Wood County vs. Dodge County.

jections to such application, in the nature of demurrer and answer, upon the grounds, among others, that the said board had no jurisdiction of the subject matter; that the application and the affidavits filed therewith did not state facts sufficient to constitute a valid claim against the county of *Wood;* and that the said Carr was not a resident of *Wood* county at the time he became insane or at the time he was sent to the said hospital. Both the application and the answer were accompanied by affidavits, the nature of which, and the proceedings of the board, will sufficiently appear from the opinion. The writ of *certiorari* was issued upon the application of the county of *Wood.*

shall be charged in accordance therewith: provided, that the county named in such order, if other than the county named in such application, may in like manner apply to said board for relief as to such order and the burden thereby imposed. And in any such case the matter shall be heard and disposed of in the manner hereinbefore provided. Sec. 2. In any case in which any error has been or shall be committed in the accounts between either state hospital for the insane, and any county, for the support of any inmate of such hospital, or in the amount certified by the secretary of state, to any county, as the amount due and to be assessed upon such county, on account of such support, and such error shall be made to appear from the certificate of the board of trustees of state hospitals for the insane, or from the certificate from the secretary of either of said hospitals, it shall be the duty of the secretary of state to correct such error, by charging to the state or to the proper county, the support of such inmate properly chargeable to it, or to such county, and by crediting the state or such county with such support when the same has been improperly charged to it, or to such county, or improperly paid. The county so credited shall have the benefit of such credit, when such secretary of state shall certify to it the sum to be raised for its then next state tax; and the county so charged shall have the amount thereof certified to it, as an item of its state tax, when such secretary of state shall certify to it the sum to be raised for its then next state tax."

By ch. 298, Laws of 1881, the boards of trustees of hospitals for the insane were abolished and their powers and functions vested in a "state board of supervision of Wisconsin charitable, reformatory and penal institutions."

For the relator there was a brief by *Geo. L. Williams*, district attorney, with *P. L. Spooner*, of counsel, and oral argument by *Mr. Spooner:*

Judicial power cannot be vested in such a body as the state board of supervision. Const., art. VII, sec. 2; *Van Slyke v. Trempealeau Co. Ins. Co.*, 39 Wis., 392; *Gough v. Dorsey*, 27 id., 131; *Attorney General v. McDonald*, 3 id., 805; *Milwaukee Ind. School v. Supervisors*, 40 id., 328; *State ex rel. Moreland v. Whitford*, 54 id., 154. As to what judicial power is, counsel cited: *State ex rel. Moreland v. Whitford*, 54 Wis., 157; Cooley's Con. Lim., 92; *Callanan v. Judd*, 23 Wis., 349; Webster's Dictionary. The fact that *quasi* judicial power, or the power to decide questions in their nature judicial, has been given by statute to town boards of review and the like, is not in conflict with the constitution, because the courts at the time of the adoption of the constitution had never been accustomed to decide such questions as they arose in the course of tax proceedings, and because now, as before the constitution was adopted, a party injured by the action of the taxing officers may have a remedy in equity, or at law by *certiorari* or by an action to recover back money paid under protest, or in some other form. The question whether Carr was a resident of *Wood* county at the time of his commitment to the hospital, was a judicial question. The question of domicile "necessarily involved the examination of witnesses and an investigation of some of the most difficult questions of law and fact which could be presented to any tribunal." *Kellogg v. Supervisors*, 42 Wis., 101; *Stringham v. Supervisors*, 24 id., 594. For the determination of such a question a party has a right to be heard in a "constitutional court to be held by a constitutional judge;" to a trial by jury; to the privilege of cross-examining witnesses; and a right to bring the case before the supreme court by writ of error or by appeal. As it is, the board of supervision, not possessing any judicial power, has assumed to decide purely

The State ex rel. Wood County vs. Dodge County.

judicial questions upon *ex parte* affidavits, has rendered a judgment from which there is no appeal, and has issued or is about to issue a certificate to the secretary of state, which will operate as an execution. It is of no use to search for any analogy between this proceeding and a proceeding for the collection of taxes. If the charges made by the state against a county for the support of its insane are in the nature of taxes, they have in this case been already paid, and this is in the nature of an action to recover the amount from a county which it is alleged was justly chargeable therewith.

*J. B. Hays*, district attorney, for the respondent.

COLE, C. J. This is a common law *certiorari*, directed to the state board of supervision of charitable and penal institutions, requiring such board to certify and return to this court its proceedings, decisions, and orders in the matter of the application of *Dodge* county for relief from the charge of supporting one George Carr, an insane person. Carr had been committed to the northern hospital for the insane, and his support for some years had been charged to the county of *Dodge*. On the hearing of this application the board — acting under the provisions of ch. 229, Laws of 1881 — found that Carr was a resident of *Wood* county when he was sent to the insane hospital, and that the expense of his maintenance had been erroneously charged to *Dodge* county. Thereupon the board made an order that from and after the 30th day of September, 1881, the expense of supporting Carr in the hospital be charged to the county of *Wood;* that *Dodge* county be credited under the law with the sums it had theretofore paid out for his support, amounting to $587.46; and that *Wood* county be charged therewith. It is the correctness of this order made by the board that we are called upon to consider.

The argument contesting the correctness of the order took a wide range. The eminent counsel who appeared for the

county of *Wood* assailed the law of 1881 as being unconstitutional. He claimed that it was a plain attempt to confer on the board of supervision judicial power which the constitution vests exclusively in courts. The questions, he says, whether Carr was a resident of *Wood* county when he was taken insane, and whether that county was legally chargeable with his past and future support, were purely judicial questions, which could only be investigated and finally determined by the courts organized under the constitution, in some appropriate proceeding.

In this case we do not find it necessary to enter upon a discussion of the grave objections which counsel has taken to ch. 229. It may well be, as he insists, incompetent for the legislature to clothe the board with power to finally determine,— without examination or review by the courts,— the question whether *Wood* county is liable for the past or future support of Carr; nor is it clear that it is the intent of the law to confer that authority upon the board. But it does not seem to be the exercise of a doubtful legislative power to confer upon the board authority to correct mistakes when satisfied that an insane person was charged to the wrong county, and to make an order,— such as is contemplated by the law,— stating therein the county to which such inmate was chargeable, which order should be deemed *prima facie* proof of the liability of the county.

Assuming, then, as we may, that the law is valid, at least to that extent, and without attempting to precisely define the powers vested in the board by its provisions, we proceed to consider a further question in the case. The board has incorporated in its return to the writ the evidence upon which its order was made. On this common law *certiorari*, which brings up for review the proceedings of an officer or board which acts in a summary manner out of the course of the common law in the exercise of *quasi* judicial powers, this court will look into the proceedings, not only for the purpose

of ascertaining whether such officer or board acted according to law and within its jurisdiction, but will also correct errors and irregularities in the proceedings. *Milwaukee Iron Co. v. Schubel*, 29 Wis., 444; *State v. Whitford*, 54 Wis., 150. It will also examine and review an order based upon facts, where there is no contention as to what the real proof in the case was. *State v. Whitford, supra.*

Observing this rule on looking into the evidence upon which the board charged *Wood* county with the support of Carr, and we think it totally fails to sustain that part of the order. To our minds the proof is entirely clear, conclusive, and uncontradicted that Carr was not a resident of that county, within the meaning of the statute, when he was taken insane. The testimony in regard to Carr's residence prior to and at this time is found in the affidavits of his wife, who gives a very clear statement as to his residence after she married him in 1863. She says they first resided in the village of Horicon, *Dodge* county, where they lived until the spring of 1872. Then they removed to the county of Pepin, where they lived until November, 1872, spending the following winter in visiting friends in various places in this state and in Illinois. They returned to Pepin county in April, 1873, and kept house in that county until about the 19th of September, when they again left the county, and spent the following winter in visiting relatives and friends in different places in this state. In the month of March, 1874, they went to Appleton, and staid about two weeks. In April, they went to *Wood* county, and boarded for a time at the village of Grand Rapids. About the last of June they removed to a place about nine miles north of the village, where Carr worked in a stave mill, and they went to keeping house there, because they could obtain no boarding place. She says the object of Carr's going to *Wood* county was to make a sale of some stave machinery which he owned, and that he sold such machinery to Clark & Scott; that it was a condition of the

sale that he should set up the machinery and assist in sawing out some stave bolts which the firm had on hand. She says when they went to *Wood* county it was not with the purpose or intention of making their residence in that county, but was solely for the purpose of disposing of the machinery. Also, that when they left the county, about the 27th of August, when Carr's mind became affected, it was with the intention of not returning thereto.

These are the real essential facts in regard to the residence of Carr in *Wood* county, and they show, beyond all doubt, that he was in *Wood* county, when taken sick, merely for a temporary purpose — in order to make sale of some machinery which he owned. On the sale of that machinery he agreed to set it up and work for a short time. He had no intention of remaining in the county after he had accomplished his end in going there. Our statute provides that the support of an insane person shall be charged to the proper county, when his proper residence shall have been ascertained. Sec. 590, R. S. The "*proper residence*" here spoken of means something more than stopping in the county for a mere temporary purpose, as on business, or for pleasure. It imports something more than this. We would not say that a person's "proper residence" was where he was making a visit, or where he was temporarily staying to transact some business, or for some transient purpose, without any intention of remaining in that place after he had accomplished his object in going there. Such a temporary stay in a place would not make one a "resident" within either the letter or spirit of the statute. But where a person takes up his abode in a county with the present intention of remaining there, where he expects to reside, where he would exercise his political right to vote, if an elector, where his personal property would be taxable in that county he might justly be said to have a "proper residence." These words are used in the statutes in very much the same sense as the words "acquired

domicile" in some authorities; that is, the place where a person has voluntarily fixed his abode, not for a mere special or temporary purpose, but with the present intention of making it his home. See *Hall v. Hall*, 25 Wis., 600; *Dutcher v. Dutcher*, 39 Wis., 651. Now it is very obvious that Carr had no such residence in *Wood* county when he was taken insane. He was in that county only for a temporary purpose, intending to go away when he had accomplished the object which called him there. Therefore he was not legally a resident of the county, and his support should not have been charged upon that county.

It follows from these views that so much of the order of the board of supervision as charges *Wood* county with the expense of supporting Carr in the hospital from and after September 30, 1881, must be reversed. We also reverse that part of the order which directs a certificate to issue under chapter 229, Laws of 1881, to the secretary of state, requiring that officer to charge *Wood* county with the sum of $587.46 as an item of its state tax for the next year,

*By the Court.*— Ordered accordingly.