TOWN OF CARLTON, Appellant, vs. STATE DEPARTMENT OF
PUBLIC WELFARE, Respondent.

*December 5, 1955—January 10, 1956.*

For the appellant there was a brief and oral argument by *George F. Miller* of Algoma.

For the respondent there was a brief and oral argument by *Vivian H. Newton,* assistant district attorney of Kenosha county.

BROWN, J.    The controversy is over the application of sec. 49.10 (4) and (7), Stats., to the facts. The material parts of the section are:

"(4) Every person (except as otherwise provided in this section) who resides in any municipality one whole year

without receipt of aid under this chapter gains a legal settlement therein; and every person who resides in a county for one year without receipt of such aid who has not acquired legal settlement in a municipality acquires legal settlement in such county. Time spent by a person in any municipality while supported therein as a dependent person or while residing in a transient camp or while employed on any municipal, county, state, or federal work-relief project or program or as an inmate of any home, asylum, or institution for the care of aged, neglected, or dependent persons, maintained by any lodge, society, or corporation, or of any state or United States institution for the care of veterans of the military and naval services, or while residing or while employed on any Indian reservation over which the state has no jurisdiction, shall not be included as part of the year necessary to acquire or lose a settlement. No legal settlement shall be lost, acquired, or changed while a person is supported in whole or in part in any institution or foster home as a public charge. The time spent by any person while residing on lands owned, operated, or controlled by another municipality shall not be included as part of the year necessary to acquire a legal settlement in the town, city, or village wherein such lands are located, but shall be included as part of the year necessary to acquire a legal settlement in such other municipality."

"(7) Every settlement continues until it is lost by acquiring a new one in this state or by residing for one whole year elsewhere than the municipality in which such settlement exists; and upon acquiring a new settlement or upon residing for one whole year elsewhere than the municipality of settlement all former settlements are lost."

It appears to us that the town has construed "resides," as used in the statute, as the equivalent of "lives in" or "exists," and that this is erroneous. Residence, in this connection, is residence with the present intent of making the place one's home, in contrast to mere presence there without such intent. It is so used in the statutes on divorce. (Sec. 247.06.) ". . . the residence must be actual and *bona fide; animo manendi.* No mere pretense of residence, no passing visit, no tempo-

rary presence, no assumption of residence here *pro hac vice* only, nothing short of actual abode here, with intention of permanent residence, will fill the letter or the spirit of the statute." *Dutcher v. Dutcher* (1876), 39 Wis. 651, 658. It is so used in the statutes dealing with the liability for care of an insane person, where the words "proper residence" in the statute were held to have "very much the same sense as the words 'acquired domicil' in some authorities; that is, the place where a person has voluntarily fixed his abode, not for a mere special or temporary purpose, but with the present intention of making it his home." *State ex rel. Wood County v. Dodge County* (1882), 56 Wis. 79, 86, 87, 13 N. W. 680. It is so used in the statutes covering the appointment of guardians. Jurisdiction of such proceedings is vested in the county court of the residence of the alleged incompetent if he is a resident of the state. In *Guardianship of Figi* (1923), 181 Wis. 136, 138, 194 N. W. 41, we held that, "The abandonment of a residence once established and the acquiring of a new residence is to a large extent a matter of intention." And in *Waushara County v. Calumet County* (1941), 238 Wis. 230, 298 N. W. 613, a poor-relief case, we stressed the question of intent when the person subject to relief went to the site of his job but left his family in the old home. We said (p. 234):

"The fact that he himself remained voluntarily away for more than one year from Red Granite without receiving relief did not defeat his legal settlement at Red Granite if his residence at Rantoul was for less than one year. His family was at Rantoul for less than a year, and if his residence was that of his family under subs. (4) and (7) of sec. 49.02, Stats., his stay at Rantoul did not gain him a legal settlement or defeat his legal settlement at Red Granite."

We conclude that the term residence as used in the statutes now in question is the equivalent of domicil as generally used by the courts and in the textbooks. It is *that* residence,

maintained in a municipality for a year without the receipt of aid under ch. 49, Stats., which establishes legal settlement there. Sec. 49.10 (4), Stats.

The domicil of a minor child, with certain exceptions not present here, is that of its father. Restatement, Conflict of Laws, p. 55, sec. 30; sec. 49.10 (2), Stats.

Mary and Ann Schlgl were twins, born in Chicago, July 10, 1892. The family moved to the town of Franklin, Kewaunee county, while the twins were infants. In 1929, when the twins were thirty-eight years of age, the parents moved to the town of Carlton, Kewaunee county, and established there a home for themselves, Ann, and Mary. The twins were of arrested mentality, remaining at a mental age of about three years and have been incompetent their entire lives.

Restatement, Conflict of Laws, p. 63, sec. 40, states:

"*c. Incompetent living with parent.* If a person before becoming of age becomes mentally incompetent so that he is unable to choose a home and he continues to live with his parent, he does not become emancipated upon arriving at majority. If no legal guardian of his person is appointed and he continues to live with the parent, he has the same domicil as that of the parent so long as he remains insane. If he does not continue to live with the parent, his domicil remains in the place in which he was domiciled at the time of his separation from his parent.

"*d.* Except as stated in comment *c,* a person who is mentally deficient or of unsound mind for whose person no legal guardian has been appointed, does not acquire a new domicil in a place in which he lives."

We conclude that, when the family moved to the town of Carlton, Mary and Ann acquired a domicil there which ripened into a legal settlement when they had lived there for one year without receiving aid under ch. 49, Stats. (They received no such aid except that from Kenosha county in 1953.)

The twins' father died February 23, 1950, still a resident of the town of Carlton. The mother had died previously. A competent sister of the twins, whose own home was in Kenosha, then made temporary arrangements for the twins to live in the home of a woman in Two Rivers, Manitowoc county, Wisconsin, and there they stayed from March 9, 1950, until on November 15, 1952, the sister, Mrs. Dostalek, was able to take them into her own home. The move to Two Rivers did not give the incompetents a domicil in that city. Comment *d* of Restatement, Conflict of Laws, p. 64, sec. 40, *supra*.

On August 20, 1950, the county court of Kewaunee county, correctly considering itself to have jurisdiction derived from the *residence* there of the incompetents, although they were then living in Two Rivers, appointed a Mr. Stangel guardian of their persons and property. He took no affirmative action to place his wards in any habitation but accepted the situation as he found it. Although a legally appointed guardian of the person of an adult incompetent may change the ward's domicil within, but not without, the state, we cannot regard his acquiescence as a change of their domicil by him from the town of Carlton.

"If a guardian of the person is appointed for one who is mentally deficient or of unsound mind and who is incapable of acquiring a domicil of choice, the ward acquires a domicil with the guardian if he lives with him within the state of the latter's appointment. The guardian cannot cause the ward's domicil to be changed to a place in a state other than the one in which the appointment was made. The guardian may cause the ward's domicil to be changed by causing him to live at a different place within the state; . . ." Restatement, Conflict of Laws, p. 64, sec. 40, comment *e*. See also *Merrell v. United States* (10th Cir. 1944), 140 Fed. (2d) 602; *Holyoke v. Haskins* (1827), 22 Mass. (5 Pick.) 20.

In the autumn of 1952, Mrs. Dostalek was able to have Mary and Ann live with her in Kenosha and offered to take

them. Mr. Stangel objected to his wards being at such a distance and, when Mrs. Dostalek insisted, he resigned and she was appointed guardian in his place on November 12, 1952. On November 15, 1952, she moved her sisters to her home in Kenosha. By March 9, 1953, the funds which they had received from their father's estate were exhausted and Kenosha county found it necessary to provide financial aid for them. The change to Kenosha was made by a duly appointed guardian intending it to be permanent. The wards lived there with the guardian, resulting in a change of the domicil of the incompetents from their previous one, town of Carlton, to Kenosha. Restatement, Conflict of Laws, p. 64, sec. 40, comments *d* and *e, supra*. But because the women were in Kenosha for less than a year before receiving aid, they did not gain legal settlement there for poor-relief purposes. Sec. 49.10 (4), Stats.

"49.10 LEGAL SETTLEMENT, HOW DETERMINED. (7) Every settlement continues until it is lost by acquiring a new one in this state or by residing for one whole year elsewhere than the municipality in which such settlement exists; and upon acquiring a new settlement or upon residing for one whole year elsewhere than the municipality of settlement all former settlements are lost."

We conclude that the legal settlement of Mary and Ann Schlgl in the town of Carlton was never lost by the acquisition of a new one. The liability of the municipality of legal settlement for the aid furnished by Kenosha county is not in dispute. This appears to be the town of Carlton and the judgment of the circuit court so holding must be affirmed.

*By the Court.*—Judgment affirmed.