# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.: 2018AP837

†Petition for Review Filed

Complete Title of Case:

VILAS COUNTY, A WISCONSIN MUNICIPAL CORPORATION,

PLAINTIFF-RESPONDENT,

V.

TIMOTHY BOWLER, KIM BOWLER AND ALPINE RESORT OF PRESQUE ISLE, INC.,

†DEFENDANTS-APPELLANTS.

| | |
|---|---|
| Opinion Filed: | July 30, 2019 |
| Submitted on Briefs: | January 8, 2019 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Stark, P.J., Hruz and Seidl, JJ. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the defendants-appellants, the cause was submitted on the briefs of *Bryce A. Schoenborn* of *Slaby, Deda, Marshall, Reinhard & Writz LLP*, Phillips. |
| Respondent ATTORNEYS: | On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Meg C. O'Marro*, Vilas County Assistant Corporation Counsel, Eagle River. |

COURT OF APPEALS
DECISION
DATED AND FILED

July 30, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP837**

STATE OF WISCONSIN

Cir. Ct. No. 2017CV132

IN COURT OF APPEALS

---

VILAS COUNTY, A WISCONSIN MUNICIPAL CORPORATION,

PLAINTIFF-RESPONDENT,

V.

TIMOTHY BOWLER, KIM BOWLER AND ALPINE RESORT OF PRESQUE ISLE, INC.,

DEFENDANTS-APPELLANTS.

---

APPEAL from a judgment of the circuit court for Vilas County: NEAL A. NIELSEN III, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

¶1 HRUZ, J. Timothy Bowler, Kim Bowler and Alpine Resort of Presque Isle, Inc. (collectively, the Bowlers) appeal a summary judgment granted in favor of Vilas County to enforce an ordinance establishing a uniform addressing system within the County. The structures on the Bowlers' property consist of a

residence from which the Bowlers operate their resort business and several cabins the Bowlers rent out on a short-term, seasonal basis.

¶2 The Bowlers assert the County lacked authority under the relevant ordinance to name the road serving their residence and rental structures. Their argument in this respect is twofold. First, they contend the road does not satisfy the ordinance's definition of a "private road." Second, they argue the road does not satisfy the ordinance's requirement that the road serve three or more "residences or lots." We conclude the road is a "private road" within the ordinance definition because it is a road located on private property that leads to the ten structures on the Bowlers' property, each of which is a "primary" or "principal" structure under the ordinance because it is used for human habitation. We also conclude the buildings satisfy the ordinance's requirement that the road serve three or more "residences," which include all of the Bowlers' cabins.

¶3 The Bowlers also challenge the County's authority under the ordinance to assign addresses to their rental cabins. They argue these buildings are not "principal" or "primary" structures and, therefore, are not subject to the County's addressing requirement. Consistent with our conclusion regarding the County's authority to name the Bowlers' private road, we reject this argument and hold that each of the ten structures at issue (the Bowlers' residence and their nine rental cabins) is a "primary" or "principal" structure to which the County may assign an address.

¶4 Finally, the Bowlers argue the ordinance is invalid because the County is applying it beyond the scope of the Wisconsin statute authorizing the County to adopt a rural naming or numbering system. We disagree and conclude

the ordinance may be properly applied to each home or business structure on the Bowlers' property. Accordingly, we affirm.

## BACKGROUND[1]

¶5 The relevant facts are largely undisputed. The Bowlers own a parcel of real property in Vilas County that is located in the Town of Presque Isle. Located on the parcel is the Bowlers' permanent residence, out of which they run their business, Alpine Resort of Presque Isle, Inc. The remaining nine buildings on the parcel are cabins that are rented on a short-term, seasonal basis in connection with the Bowlers' resort business.

¶6 In 2008, the Vilas County Board of Supervisors adopted a Uniform Addressing System Ordinance (the Ordinance) as chapter 28 of the General Code of Vilas County. The Ordinance, adopted pursuant to WIS. STAT. § 59.54(4),

---

[1] WISCONSIN STAT. RULE 809.19(3)(a)2. (2017-18) requires a respondent's brief to include a statement of the case "with appropriate references to the record." *See also* RULE 809.19(1)(d). The County's brief includes some citations that refer generally to whole documents within the record without specifying the page of the document on which the relevant information may be found. Additionally, it cites to exhibits without identifying the record document to which the exhibit is attached. Further, the copy of the relevant ordinance the County includes in its supplemental appendix appears not to have been made part of the record below. We typically will not consider materials in an appendix that are not in the appellate record. *Roy v. St. Lukes Med. Ctr.*, 2007 WI App 218, ¶10 n.1, 305 Wis. 2d 658, 741 N.W.2d 256. Nonetheless, the relevant portions of the ordinance are recited in the briefs and in the complaint, the content of the ordinance is undisputed, and a copy of the ordinance is available on the Vilas County website. *See* VILAS COUNTY, WIS., GENERAL CODE OF VILAS COUNTY ch. 28 (2008), https://vilascountywi.gov/documents/Corporation%20Counsel/chap28.pdf (last accessed July 24, 2019). Under these circumstances, we elect to reach the merits of the Bowlers' challenges. However, this court is a "fast-paced, high-volume court," *State v. Pettit*, 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992), and we admonish the County that future violations of the Rules of Appellate Procedure may result in sanctions. *See* WIS. STAT. RULE 809.83(2) (2017-18).

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted. All references to chapter 28 of the General Code of Vilas County are to the 2008 version.

made explicit its purpose as being to "facilitate the naming of roads, signing of roads, assigning of addresses, location of address signs and house numbers in order to aid emergency personnel in providing fire protection, emergency medical services, law enforcement services, delivery of mail and meet other general location needs of the public." VILAS COUNTY, WIS., GENERAL CODE OF VILAS COUNTY § 28.01 (hereinafter, VILAS COUNTY CODE).

¶7 To that end, the Ordinance gives the County the authority to name "[e]xisting public or private roads serving three (3) or more residences or lots." VILAS COUNTY CODE § 28.06(3). The Ordinance also dictates that "[a]ll homes, businesses, farms, multifamily dwellings, structures for human habitation, and other establishments, within the unincorporated areas of Vilas County shall have an assigned uniform addressing number." VILAS COUNTY CODE § 28.09(1). In describing the addressing number system, the Ordinance states: "Each principal structure shall be assigned an address based on where the driveway to the structure intersects the named road"; and, "Where more than one principal structure exists, each structure shall be assigned an address." VILAS COUNTY CODE § 28.10(2), (3).

¶8 In early 2015, the County began an address assessment of the Bowlers' Presque Isle property.[2] During the assessment, the Vilas County

---

[2] According to information the County provided to the Bowlers, the address assessment was part of an effort to "identify[] discrepancies in the addressing database that is utilized by the Vilas County Dispatch Center for 911 calls." The County stated that addresses that were not compliant with the address grid "can cause confusion and may create difficulty or delays in locating a structure, especially during an emergency situation." In conducting the assessment, the County was acting pursuant to VILAS COUNTY CODE § 28.11(10), which states: "Existing addresses that are discovered to have been incorrectly assigned shall be evaluated by the County and a determination shall be made if the situation needs to be corrected. The landowner(s) affected may be required to change their address to correct the situation."

Addressing Coordinator determined that, in addition to the Bowlers' residence, the nine rental units comprising Alpine Resort required address numbers, and the road serving those units and the residence had to be named. The County notified the Bowlers of its conclusion by letter, and it requested that the Bowlers submit a road name request form so the County could proceed with naming the private road. The County stated it would assign address numbers to the structures along the private access road after the road had been named.

¶9 The County received a telephone call from the Bowlers objecting to the County naming their road. Then, on August 31, 2015, the Bowlers attended a meeting of Vilas County's Land Records Committee and objected to the application of the Ordinance in its entirety to the Bowlers' property, including the County's decision to assign address numbers to their rental cabins. The Land Records Committee concluded it was without authority to exempt any property from the Ordinance, and the Addressing Coordinator sent the Bowlers another letter advising them of the County's intent to name their road and assign addresses to the structures on their property.

¶10 As of October 5, 2015, the County had not received a response from the Bowlers regarding their preferred road name, and the County designated the existing road "Alpine Resort Dr." The Bowlers then notified the County that they wished for the road to be named "Private Resort Dr.," which the Town of Presque Isle subsequently approved. The County notified the Bowlers that signs would be installed on their property reflecting the new road name and assigned addresses for the buildings.

¶11 On December 1, 2015, the Town of Presque Isle installed a new road name sign at Private Resort Drive's intersection with Crab Lake Road, a public

5

right-of-way. The Bowlers confronted the town official who was installing the sign and refused him entry onto their property to install address numbers, claiming his presence was unlawful and he was trespassing. Thereafter, the Bowlers continued to refuse access to their property for installation of address numbers assigned to Private Resort Drive.

¶12 The County filed this action in September 2017, asserting the Bowlers' conduct constituted a "flagrant and continuing violation" of the Ordinance. The County sought an injunction prohibiting the Bowlers from interfering with the installation of any necessary signage, as well as forfeitures for their alleged violations of the Ordinance. In response, the Bowlers asserted that the Ordinance, by its plain terms, could not be applied to their property, such that the County was prohibited from naming their road or assigning an address to any building except their residence. The Bowlers argued that even if the Ordinance could be construed to permit those activities, it exceeded the scope of the authorizing legislation codified in WIS. STAT. § 59.54(4), and therefore was unenforceable by the County.[3]

¶13 The parties filed cross-motions for summary judgment regarding the enforceability of the Ordinance. At the summary judgment hearing, the County asserted that the Ordinance permitted it to assign addresses to any building used for human habitation, and further that such an interpretation was permissible under WIS. STAT. § 59.54(4) because each of the Bowlers' rental structures was a

---

[3] The Bowlers filed a counterclaim with their answer. The circuit court concluded the counterclaim was indistinct from the Bowlers' answer and affirmative defenses and did not require a responsive pleading from the County. The Bowlers do not challenge that determination on appeal.

"business" or "establishment" within that statute's meaning. The circuit court stated it understood the County's position. But the court also remarked it could "certainly understand that the [Bowlers] have an interest in the name of their business, and they have an interest in an address that has been established and used for marketing … for a long time."

¶14 The circuit court adjourned the hearing without granting either summary judgment motion and encouraged the parties to explore the possibility of reaching a "cooperative resolution" involving the Land Records Committee. The Land Records Committee met in February 2018 to again consider the application of the Ordinance to the Bowlers' property, but the Bowlers did not attend the meeting. The committee again concluded the Bowlers were required to comply with the Ordinance.

¶15 The County then filed a motion for default judgment based upon the Bowlers' failure to appear before the Land Records Committee. At the continued hearing on the various motions, the circuit court declined to hold the Bowlers in default, but it granted the County's summary judgment motion. The court concluded that *Liberty Grove Town Board v. Door County Board of Supervisors*, 2005 WI App 166, 284 Wis. 2d 814, 702 N.W.2d 33, was "conclusive" of the County's authority to adopt the Ordinance. It also concluded the rental structures on the Bowlers' property could properly be considered "residences" so as to require naming of the Bowlers' road and addressing of those structures. The Bowlers now appeal.

## DISCUSSION

¶16 We review a grant of summary judgment de novo. *Chapman v. B.C. Ziegler & Co.*, 2013 WI App 127, ¶2, 351 Wis. 2d 123, 839 N.W.2d 425.

7

Summary judgment is appropriate if the record demonstrates that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2). Reviewing a grant of summary judgment involves following a well-established methodology under which we first examine the pleadings to determine whether a claim has been stated, and, if so, we then analyze whether any factual issues exist. *Kieninger v. Crown Equip. Corp.*, 2019 WI 27, ¶11, 386 Wis. 2d 1, 924 N.W.2d 172.

¶17 Additionally, this case requires that we interpret and apply the Ordinance and WIS. STAT. § 59.54(4), the statute under which the Ordinance was adopted. The same rules of interpretation apply to ordinances and to statutes. *Schwegel v. Milwaukee Cty.*, 2015 WI 12, ¶22, 360 Wis. 2d 654, 859 N.W.2d 78. In both instances, we begin with the plain language; if the meaning of the ordinance or statute is clear, we ordinarily stop the inquiry. *Id.* Statutory and ordinance language is given its common, ordinary and accepted meaning, except that technical or specifically defined words or phrases are given those respective meanings. *Id.* Additionally, statutory and ordinance language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely related statutes, and reasonably, to avoid absurd or unreasonable results. *State ex rel. Kalal v. Circuit Court for Dane Cty.*, 2004 WI 58, ¶46, 271 Wis. 2d 633, 681 N.W.2d 110.

¶18 The Bowlers challenge various aspects of the Ordinance as part of two overarching arguments. First, the Bowlers assert the County lacks authority under the Ordinance to name their road, both because the road does not qualify as a "private road" and because the road does not serve "three (3) or more residences." *See* VILAS COUNTY CODE § 28.06(3). Second, the Bowlers contend the rental buildings on their property cannot be assigned addresses because only

"principal structures" may be assigned an address and their residence is the only "principal structure" on the property. *See* VILAS COUNTY CODE § 28.10(2). We reject these arguments for the reasons that follow.

¶19    The Bowlers also argue that even if the Ordinance is properly interpreted as the County suggests, it exceeds the scope of WIS. STAT. § 59.54(4). The Bowlers therefore assert the Ordinance is invalid and the County cannot enforce it. To the contrary, we conclude the addressing system adopted by the County does not exceed the authority conferred by § 59.54(4).

*I.   The County properly concluded the Ordinance can be applied to name the Bowlers' road.*

¶20    VILAS COUNTY CODE § 28.06 concerns the assignment of road names within the County. Private roads in existence at the time the Ordinance was enacted must be named if they serve three or more residences or lots. VILAS COUNTY CODE § 28.06(3). A "private road" is defined by the Ordinance as "any road on private property leading to two or more driveways and/or principal structures that may not be visible from a named road." VILAS COUNTY CODE § 28.05(6).

¶21    The Bowlers argue their road is not a "private road" within the meaning of VILAS COUNTY CODE § 28.06(3) because it does not lead to two or more driveways or principal structures.[4] It appears undisputed that the Bowlers' road does not lead to two or more driveways and that the Bowlers' residence and

---

[4] Consistent with this argument, the Bowlers' brief refers to the road as a "driveway," which the Ordinance defines as a "private road serving not more than two primary structures." VILAS COUNTY CODE § 28.05(4).

9

their rental units may not be visible from a named road. Thus, the question is whether the Bowlers' road leads to two or more "principal structures." As we explain in the following section, we conclude that the Bowlers' residence and each of their rental units is a "principal structure" under the Ordinance. Accordingly, we conclude that the road is a "private road" within the meaning of § 28.06(3) because it leads to the Bowlers' residence and their nine rental cabins.

¶22    We next consider whether the private road serves three or more residences or lots, as required by VILAS COUNTY CODE § 28.06(3).[5] Unlike the phrase "private road," the Ordinance does not provide a definition of the term "residence." The Bowlers urge us to adopt what they consider a "common and ordinary" definition of "residence" that requires occupancy with some degree of permanency. The Bowlers argue their rental cabins do not qualify under their preferred definition because they are "temporary dwellings which are intended for temporary habitation for occupants for only part of the year." As support for their definition, the Bowlers cite several cases involving the term "residence" as applied in other legal contexts.

¶23    It is true that some cases speak of a "residence" in a fashion that requires a degree of permanency in the occupation of the premises. This understanding of the term is particularly true in cases requiring a certain period of "residence" (or absence thereof) before the happening of a particular thing. For example, the Bowlers rely on *Miller v. Sovereign Camp Woodmen of the World*,

---

[5] Because we conclude the Bowlers' private road serves three or more residences, it is not necessary for us to consider the County's alternative argument that the road serves three or more "lots."

140 Wis. 505, 122 N.W. 1126 (1909), in which our supreme court—in dealing with an attempt to collect life insurance on an absent relative—stated: "Residence signifies a person's permanent home and principal establishment, to which whenever he is absent he has the intention of returning." *Id.* at 509.

¶24    The Bowlers also rely on *Town of Carlton v. State Department of Public Welfare*, 271 Wis. 465, 74 N.W.2d 340 (1956), in which our supreme court was required to determine the "legal settlement" of certain individuals for purposes of ascertaining which of the county or the municipality was responsible for furnishing them with statutory public assistance. *Id.* at 466-67.  For purposes of that statute, the court concluded that the verb "resides" was a reference to a person's domicile.  *Id.* at 468.  "Residence, in this connection," stated the court, "is residence with the present intent of making the place one's home, in contrast to mere presence there without such intent.  …  No mere pretense of residence, no passing visit, no temporary presence … nothing short of actual abode here, with intention of permanent residence, will fill the letter or the spirit of the statute." *Id.* at 467-68.

¶25    Yet this conception of "residence" as encompassing a degree of permanency is not the only meaning that can be assigned to the term.  We often consult dictionary definitions to assist us in determining the ordinary meaning of statutory language. *County of Dane v. LIRC*, 2009 WI 9, ¶23, 315 Wis. 2d 293, 759 N.W.2d 571.  "Residence," to be sure, encompasses "a temporary or permanent dwelling place, abode, or habitation to which one intends to return as distinguished from a place of temporary sojourn or transient visit." *Residence*, Webster's Third New International Dictionary (1993).  But the term may also have a meaning that focuses on the building's use as opposed to the subjective intent of a particular individual.  To be precise, a "residence" means "a building

11

used as a home; DWELLING." *Id.* Use of "residence" in this sense would appear to encompass use for temporary lodging, as the types of activities being undertaken within the Bowlers' rental units (e.g., eating, sleeping, bathing) are indistinguishable from the types of activities that take place in a home.

¶26 The mere existence of multiple dictionary definitions does not necessarily mean a word is ambiguous. *Ho-Chunk Nation v. DOR*, 2009 WI 48, ¶23, 317 Wis. 2d 553, 766 N.W.2d 738. "Many words have multiple dictionary definitions; the applicable definition depends upon the context in which the word is used." *Kalal*, 271 Wis. 2d 633, ¶49. Explicit statements of legislative purpose are helpful in arriving at the correct interpretation; "a plain-meaning interpretation cannot contravene a textually or contextually manifest statutory purpose." *Id.*

¶27 Here, the legislative body clearly had the latter meaning of "residence" in mind when it adopted the Ordinance. The Vilas County Board of Supervisors stated the intent of the Ordinance was "to facilitate the naming of roads, signing of roads, assigning of addresses, location of address signs and house numbers in order to aid emergency personnel in providing fire protection, emergency medical services, law enforcement services, delivery of mail and meet other general location needs of the public." VILAS COUNTY CODE § 28.01. This purpose could hardly be met if the road-naming provision did not apply to roads leading to structures intended or used for temporary lodging. Temporary inhabitants of a structure in Vilas County, much like the County's permanent residents, may occasionally require emergency services at their location. The Ordinance's objective is to ensure that emergency personnel can easily locate persons in need to deliver such services. Adopting the restrictive meaning of "residences" urged by the Bowlers would eviscerate this explicit purpose.

¶28    Interpreting the term "residence" to include structures intended for short-term rental is not a novel approach.  In ***Heef Realty & Investments, LLP v. City of Cedarburg Board of Appeals***, 2015 WI App 23, 361 Wis. 2d 185, 861 N.W.2d 797, this court considered "whether short-term rental is a permitted use for property in a single-family residential district under the City of Cedarburg's zoning code."  *Id.*, ¶1.  The ordinance there stated that use as a single-family dwelling was permitted, but it did not impose any time requirement on the duration of that use.  *Id.*, ¶10.  We concluded that under ***State ex rel. Harding v. Door County Board of Adjustment***, 125 Wis. 2d 269, 371 N.W.2d 403 (Ct. App. 1985), we were required to "look at the language of the ordinance, which is about the use of the property, not the duration of that use."  ***Heef Realty***, 361 Wis. 2d 185, ¶11.

¶29    As a result, we rejected the city's argument that the term "residence" included an inherent temporal element.  *See id.*, ¶13 ("There is nothing inherent in the concept of residence or dwelling that includes time.").  Focusing on the nature of the property's use, we observed that the home in ***Harding*** "was designed with a kitchen, dining room, living room, and four bedrooms"—precisely the type of arrangement one would expect in a place intended for human habitation.  ***Heef Realty***, 361 Wis. 2d 185, ¶12.  We concluded:

> This focus on the daily living connotation of "residential" gibes with the circuit court's explanation that what makes a home a residence is its use "to sleep, eat, shower, relax, things of that nature."  What matters is residential use, not the duration of the use.  The words "single-family," "residential" and "dwelling" do not operate to create time restrictions that the legislative body did not choose to include in the ordinance.

*Id.* In this case, the Bowlers argue the term "residence" implies precisely the type of durational element we rejected in *Heef Realty*. We see no reason to exclude certain residential structures from the scope of the Ordinance merely because the occupants are purchasing a short-term lease to reside in those structures.

¶30 Accordingly, we conclude the term "residences" in VILAS COUNTY CODE § 28.06(3) is not limited to structures intended for a degree of permanent occupancy by the same individuals. Rather, the term refers generally to structures that are intended or used for human habitation—regardless of the duration of any such habitation by any particular human. Because it is undisputed that the Bowlers' rental cabins are used for this purpose, they are "residences" under the Ordinance. The County therefore could properly name the Bowlers' private road because it serves "three or more residences."[6]

## II. The County properly applied the Ordinance to assign address numbers to the Bowlers' rental structures.

¶31 As mentioned above, both the road-naming section and the address provisions of the Ordinance refer to a "principal structure." Specifically, the

---

[6] The Bowlers contend the circuit court lacked sufficient evidence to grant the County's summary judgment motion, focusing on the court's partial reasoning that the cabins were "residences" because they could be converted to condominiums at some point in the future. They contend there was no evidence before the court "to suggest or allow it to conclude that the rental units on the Bowlers' property were going to become condominiums."

As a general rule, if a circuit court reached the correct result, we may affirm its decision even if the court used a rationale that we do not adopt. *See Correa v. Farmers Ins. Exch.*, 2010 WI App 171, ¶4, 330 Wis. 2d 682, 794 N.W.2d 259. Additionally, we apply a de novo standard of review to all issues presented in this case. *See supra* ¶¶16-17. Because we conclude the Bowlers' rental cabins qualify as "residences" under the Ordinance without regard to any potential future use as condominiums, we need not address the Bowlers' argument regarding the sufficiency of the record to support the circuit court's "condominium conversion" reasoning.

14

Bowlers challenge the County's authority to assign address numbers to their rental cabins under VILAS COUNTY CODE § 28.10(2) and (3). Section 28.10(2) states, "Each principal structure shall be assigned an address based on where the driveway to the structure intersects the named road." Section 28.10(3) states, "Where more than one principal structure exists, each structure shall be assigned an address."

¶32     The Ordinance does not define the phrase "principal structure." It does, however, contain an enumerated definition for "primary structure." A "primary structure" is "a building in which is conducted the principal use of the lot or parcel in which it is located. A primary structure may be used for residential, commercial, industrial, public-semipublic, recreation, or other." VILAS COUNTY CODE § 28.05(5). The Bowlers appear to concede the definition of "primary structure" applies where the phrase "principal structure" is used elsewhere in the Ordinance.

¶33     Even absent such a concession, we agree with the County that the phrases "primary structure" and "principal structure" are synonymous under the Ordinance. The phrase "primary structure" is found only three times in the Ordinance, with each use located in the definitions section. *See* VILAS COUNTY CODE § 28.05(1), (4), (5). "Primary," as used in these instances, means "first in rank or importance : CHIEF, PRINCIPAL." *Primary*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1993). The definitions section of the Ordinance uses "principal structures" once, in defining a "private road," *see* § 28.05(6), and "principal structure" appears elsewhere only in the section discussing implementation of the addressing system, *see* VILAS COUNTY CODE § 28.10(2), (3). "Principal," in this context, means "most important, consequential, or influential : relegating comparable matters, items, or individuals to secondary

15

rank." *Principal*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1993). Considering the context of the statute as a whole—and the nearly identical meanings commonly ascribed to the adjectives "primary" and "principal"—we conclude the Ordinance's definition of "primary structure" also applies in instances where the Ordinance uses the phrase "principal structure."

¶34    The Bowlers—in a conclusory fashion—contend there is only one "principal structure" on their property, which is the residence out of which they conduct their business. They reach this conclusion by reasoning that there can be only one "primary" or "principal" structure on any given lot. The Bowlers argue that if their residence and rental cabins all qualify as "primary" structures, none of them are, in fact, "primary." Implicitly, the Bowlers appear to be asserting that the primary use of their lot is for residential purposes, and therefore only their residence qualifies as a "principal structure."

¶35    The main problem with the Bowlers' argument is that their reasoning tracks neither the Ordinance's language nor its purpose. The Ordinance, in adopting the uniform addressing system, states: "All homes, businesses, farms, multifamily dwellings, structures for human habitation, and other establishments, within the unincorporated areas of Vilas County shall have an assigned uniform addressing number." VILAS COUNTY CODE § 28.09(1). The Bowlers' interpretation of the provisions implementing this general requirement—in particular VILAS COUNTY CODE § 28.10(2) and (3)—would lead to an absurd result. Namely, under the Bowlers' approach, structures like their rental cabins— which, again, plainly are structures for "human habitation" and therefore are structures requiring address numbers under § 28.09(1)—would not receive addresses. We avoid unreasonable interpretations of statutes. *Kalal*, 271 Wis. 2d 633, ¶46.

16

¶36    Reading the Ordinance as a whole, it is evident VILAS COUNTY CODE § 28.10(2) was meant to limit the grant of addressing authority contained in § 28.09(1), which, if broadly construed, could apply to nearly every building on a property.  The circuit court questioned the County about the scope of its authority under the Ordinance, asking whether a lumber company with a mill, a drying shed, a retail store, and some storage buildings—all business structures—would each be required to have a separate address.  The County agreed that not all of the buildings described by the circuit court would need to be addressed.  Section 28.10(2) limits the assignment of addresses to each "principal structure," ensuring that the most important or frequently occupied buildings on the property receive addresses, while buildings only tangentially involved in the principal use or uses of the property need not be separately addressed.

¶37    Moreover, the plain language of the Ordinance appears to allow for multiple uses of the same property.  Although the Ordinance's definition of a "primary structure" uses the definite article "the" in referring to the "principal use" of a lot or parcel, it goes on to state that a primary structure may be used for a variety of purposes, including residential or business purposes.  *See* VILAS COUNTY CODE § 28.05(5).  On this record, it seems apparent the Bowlers' "principal use of the lot or parcel" involves both residential and business uses, the latter of which itself is to provide short-term residences for rent.  Because the structures at issue are all used for human habitation, it makes no sense to draw a distinction between residential and business uses as the Bowlers do.

¶38    Furthermore, even if such a distinction was warranted by the Ordinance language, the Bowlers' arguments are insufficient to explain why that distinction should matter for our purposes here.  First, they never explain why their "residential" use of a single building should dictate that the predominant use

of their whole parcel is residential and not business-related. Specifically, the Bowlers do not address the undisputed fact that they operate nine other buildings in connection with their resort business and even operate their business out of their home. Indeed, in their reply brief, the Bowlers assert that their home doubles as a resort lodge. Second, even if the primary use of their parcel is "residential," the Bowlers fail to explain why the nine habitable cabins they own are not also "primary structures" that are part of such use.[7] The Bowlers give virtually no consideration to the Ordinance's statement that "[w]here more than one principal structure exists, each structure shall be assigned an address." VILAS COUNTY CODE § 28.10(3).

¶39    In sum, we conclude the Bowlers' residence and each of their resort cabins are "principal structures" within the meaning of VILAS COUNTY CODE § 28.10(2). Additionally, the road on their property qualifies as a "private road" because it leads to "two or more … principal structures" under VILAS COUNTY CODE § 28.05(6). The County could therefore properly name the Bowlers' road and assign addresses to their residence and the rental units.

### III. The County did not exceed the authority granted by the enabling statute.

¶40    The Bowlers alternatively contend that if the Ordinance is interpreted to include their rental cabins as structures to which separate addresses will be assigned, its reach extends "beyond that of the enabling statute." "A

---

[7] Under the Bowlers' logic, the status of the cabins as "primary structures"—and therefore the County's ability to address those cabins—would change merely if the Bowlers' residence was located on a different parcel. This incongruence in the application of the Ordinance produces an absurd outcome, and we strive to avoid absurd results.

county's statutory authority is limited to that provided in the enabling statute." ***Liberty Grove Town Bd.***, 284 Wis. 2d 814, ¶16. When an ordinance does not comply with the enabling statute, it is invalid and may not be enforced. ***Id.***

¶41 The enabling statute is WIS. STAT. § 59.54(4), which permits a county board to "establish a rural naming or numbering system in towns for the purpose of aiding in fire protection, emergency services, and civil defense." Under the statute, "[e]ach rural road, home, business, farm or other establishment, may be assigned a name or number," and "[t]he names or numbers may be displayed on uniform signs posted on rural roads and intersections, and at each home, business, farm or other establishment." ***Id.***

¶42 The terms "home," "business," and "farm" are, in the Bowlers' view, "more or less … self-explanatory terms." They propose that the term "establishment" should have its common dictionary meaning, which is "a more or less fixed and [usually] sizable place of business or residence together with all the things that are an essential part of it (as grounds, furniture, fixtures, retinue, employees)." *Establishment*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1993). The Bowlers assert their rental cabins do not fit any of these definitions, and they summarily argue "[t]here is only one home, business or establishment on the parcel, which is the Bowlers' permanent residence out of which they conduct their business."

¶43 The Bowlers do not explain how, under their preferred dictionary definition of that term, their rental cabins are not "establishments," as those

19

structures are used for both business and residential purposes.[8] *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) ("We may decline to review issues inadequately briefed."). Rather, they appear to believe that WIS. STAT. § 59.54(4) allows the County to assign only one address per home or business, regardless of how many structures are present on the property. The Bowlers posit that extending § 59.54(4) to include "every structure used for business purpose[s] would greatly expand the reach of the enabling statute." They suggest a hypothetical scenario in which "a car dealership with an office, a detached shop, and a shed" on a single parcel would each be assigned a different address by the County. This result, they argue, would be generally supported by the public safety objectives of the Ordinance, but it would not be permitted under the enabling statute.

¶44 We disagree with the Bowlers' interpretation of WIS. STAT. § 59.54(4) and how it applies in this context. The Ordinance here does not purport to allow the County to assign an address to every building merely because it is used for a business purpose. Rather, under the Ordinance, the County is allowed to assign an address to each "primary" or "principal" structure involved in a particular use of the property. This allowance is compatible with the enabling

---

[8] As noted earlier in the opinion, it is undisputed (and indisputable) that the rental cabins are "structures for human habitation," as that phrase is used in VILAS COUNTY CODE § 28.09(1). *See supra* ¶35. While WIS. STAT. § 59.54(4) itself does not include that particular phrase in its enumerated list of places that may be assigned a name or number, "structures for human habitation" are certainly a type of "other establishment" under § 59.54(4). The Ordinance in § 28.09(1) merely enumerates two additional types of "other establishments"—namely, multifamily dwellings and structures for human inhabitation. The Bowlers do not argue, and likely could not argue, that by including "structures for human habitation" among those "other establishments" that could be assigned addresses, the County was acting outside the scope of the enabling statute. And, if "structures for human habitation" fall within the purview of § 59.54(4), then the County was clearly within its authority to assign addresses to the structures at issue here.

statute, which allows for the County to assign an address to each "establishment." The rental cabins on the Bowlers' property appear to satisfy the Bowlers' preferred definition of an "establishment," as each is a primary or principal structure used for residential and business purposes together with all the things that are an essential part of those uses. Given the Bowlers' lack of a developed argument on the point, we conclude the cabins are "establishments" and, therefore, are valid subjects for addressing under § 59.54(4).

  *By the Court.*—Judgment affirmed.